**HAMILTON HILLS GROUP, LLC, Appellant**

v.

**HAMILTON TOWNSHIP ZONING HEARING BOARD and Hamilton Township Board of Supervisors.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 21, 2010.

Decided Sept. 1, 2010.

---

Wendy Weikal–Beauchat, Gettysburg, for appellant.

Ronald T. Tomasko, Hershey, for appellees, Hamilton Township Board of Supervisors.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Hamilton Hills Group, LLC, (Group) appeals from an order of the Court of Common Pleas of Adams County (trial court), which affirmed the Hamilton Township Zoning Hearing Board's (Board) denial of the Group's request for a special exception under the Hamilton Township (Township) Zoning Ordinance (Ordinance). The Group's application called for the construction of 325 townhouse units on a parcel of land spanning three municipalities. Under the Ordinance, the Group was required to provide for 300 square feet of open space per unit. (Ordinance § 150–34A(8).) Finding that the Group failed to introduce sufficient evidence to establish that the proposed development contained the required amount of open space within the Township's borders, the Board denied the application. On appeal, the Group argues that, when viewed as a whole, the land on

which the development was to be built contains sufficient open space, and it is irrelevant that the open space is located in neighboring municipalities.

The issue presented in this case is a novel one: in the absence of explicit language in a zoning ordinance directly stating that all requirements for a special exception must be satisfied by land within the borders of the enacting municipality, may a zoning hearing board refuse to consider land located outside its jurisdiction in determining whether the developer's plan satisfies the municipality's zoning requirements? Based on the plain language of the Ordinance in question, the limited nature of the zoning power, and the constitutional boundaries within which that power is exercised, we hold that a zoning hearing board may limit itself to the consideration of land located within the borders of the enacting municipality.

Over the past five years, the Group has been planning a large development of townhouses. If brought to completion, the development will be built on an 89.37 acre parcel of land (Property) owned by the Group. The Property spans three municipalities: the Township, Berwick Township (Berwick), and the Borough of Abbottstown (Abbottstown). However, the plan calls for all 325 of the proposed townhouse units to be built on the portion of the Property located in the Township. That portion of the Property is located in an R–3 Residential District, which permits moderate density residential uses. The proposed development is not a use permitted by right in that district.[1] (*See* Ordinance § 150–33.)

On October 23, 2008, the Group appeared before the Board to apply for a special exception under Section 150–34A of the Ordinance, which permits construction of townhome developments in the R–3 district, provided certain criteria are met.[2]

1. The only uses permitted by right in an R–3 district are:

  A. Single Family detached dwellings.
  B. Single family semidetached dwellings (twins).
  C. Two family dwellings (duplexes).
  D. Wireless communications antennas mounted on an existing public utility transmission tower, building, or other structure, along with associated communications equipment buildings, provided the requirements of § 150–12H are met.
  E. Public or private schools.
  F. Public or private parks.
  G. Accessory uses, including garages, storage buildings, and similar uses.
(Ordinance § 150–33.)

2. Section 150–34 of the Ordinance provides, in relevant part:

Within the R–3 District, the following uses are permitted by conditional use. The Zoning Hearing Board may authorize a use as a special exception use if it conforms, at a minimum, to the stated standards and criteria. The Zoning Hearing Board may apply additional criteria to specific projects, where relevant, to protect the residential environment of developing neighborhoods, and in the interests of public health, safety, and welfare.

  A. Townhouse Community.
    (1) The minimum parcel size for a townhouse community project shall be one acre.
    (2) The maximum permitted density shall be four dwelling units to the acre, based on gross acreage.
    (3) The maximum number of attached dwelling units in any townhouse structure shall be six dwelling units.
    (4) The minimum dwelling unit width shall be 20 feet.
    (5) Any townhouse structure containing four or more dwelling units shall be designed such that the front façade of each dwelling unit is staggered by a minimum differential of two feet from each adjoining dwelling unit.
    (6) A townhouse community perimeter setback of 30 feet shall be established. All structural and parking lot improve-

(Ordinance § 150–34A.) Of the eleven requirements set forth in Section 150–34A, only one is at issue in this appeal: Subsection 8, which states that any development with more than 12 dwelling units must contain a "designated open space or recreation area," containing a minimum of 300 feet of open space per unit.[3] (Ordinance § 150–34A(8).)

At the hearing, Mr. Aiello, a consultant working for the Group, testified that, when viewed as a whole, the Property contained sufficient acreage to meet the Ordinance's open space requirement. (Board Hr'g Tr. at 41, October 23, 2008.)[4] However, Mr. Aiello also testified that, while all the townhouses would be built in the Township, he was unsure as to how much of the open space would be located in the Township, or whether there was sufficient open space to satisfy the requirement if the parts of the Property located in Abbottstown and Berwick were not considered. (Board Hr'g Tr. at 41.) The Board accepted public comment and testimony and, after several continuances, ultimately rejected the application. In its opinion, the Board stated that the Group failed to establish that its plan contained the required amount of open space within the Township.[5] (Board Op., Findings of Fact (FOF)

ments shall be subject to the perimeter setback.

(7) Parking areas shall be located either to the rear of individual townhouse buildings or in common parking areas. Under no circumstances shall parking be permitted within the required setbacks along the perimeter of the townhouse community project, nor shall be permitted in the front yards of individual townhouse structures.

(8) A designated open space or recreation area shall be provided for any townhouse project site in excess of 12 units. The minimum open space or recreation area shall contain 300 square feet for each dwelling unit.

(9) The minimum separation between townhouse buildings shall be 25 feet. Townhouse buildings shall be arranged, to the maximum extent possible, such that the front and rear facades of adjacent buildings do not face each other.

(10) Architectural renderings shall be submitted with the special exception application depicting the architectural styles and materials to be used in the townhouse community. A minimum of two visually distinct exterior building materials (such as brick, aluminum siding, or wood) shall be used on each townhouse structure within a townhouse community.

(11) A site plan must be submitted with [the] special exception application showing the interrelationships between the proposed structures, open space or recreation areas, sidewalks, streets, parking areas, landscaping, and other features necessary to evaluate the proposed site design.

(Ordinance § 150–34.)

3. Three-hundred square feet per unit, multiplied by 325 units, yields a total required area of 97,500 square feet, or roughly two and a quarter acres (an acre is 43,560 square feet).

4. A reproduced record was provided for this case, but it is not consecutively paginated; thus, we refer only to the hearing transcript page numbers.

5. Although we note the Group's contention that the Board found that all requirements other than Subsection 8 were satisfied, that is not correct. The Board also concluded that Subsection 2 had not been satisfied. At the final hearing, the Board's discussion centered on the Group's inability to satisfy the density requirement, not the open space requirement. (Board Hr'g Tr. at 2–8, January 22, 2009.) When the Board ultimately voted to deny the application, the transcript shows that the Board members concluded that the Group could not satisfy either the density condition or the open space condition:

CHAIRMAN DAVID JAECKELS: Okay.

We'll bring the meeting back to order, please.

I'd like to make a motion to deny the Applicant's application for a special exception based on the plan submitted is 324[sic] units. The amount of area in Hamilton

¶¶ 11–12.) The Group appealed to the trial court.

■ In an order issued on October 16, 2009, the trial court affirmed the Board's decision without taking additional evidence. The trial court held that, because municipalities have no authority to exert extraterritorial control, it would have been improper for the Board to consider the portions of the Property not located within the Township's borders. (Trial Ct. Op. at 3–4.) On November 12, 2009, the Group filed a notice of appeal from the trial court's order.[6]

As a preliminary matter, we address the Board's[7] argument that the Group waived its right to raise any issue before this Court by failing to file a timely petition for review as required by Pa. R.A.P. 1512; a "general statement of . . . objections" pursuant to Pa. R.A.P. 1513(d)(5); or alternatively, a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). We conclude that the Group did not waive its right to raise any issue.

This Court has already addressed the timeliness issue, as well as the Group's failure to include a statement of objections. On March 10, 2009, the Board filed a Motion to Quash or Alternatively Dismiss Petitioner's Notice of Appeal (Motion) on the grounds that the Group's petition for review was untimely and improper under Chapter 15 of the Rules of Appellate Procedure. On March 16, 2010, this Court denied the Motion, finding that an appeal from a trial court order is taken by filing a timely notice of appeal in accordance with Pa. R.A.P. 903, and that the Group had complied with all the requirements of Chapter 9 of the Pennsylvania Rules of Appellate Procedure.[8] *Hamilton Hills*

Township is allowed 292, so it does not meet the requirements, plus there's not enough information provided to determine open space.
(Board Hr'g Tr. at 14.) Immediately following this statement, the motion was seconded and unanimously passed. (Board Hr'g Tr. at 15.) Further, the record supports the Board's conclusion that the Group cannot satisfy the density requirement without relying on the land located in the other two municipalities. However, the Board did not mention the Group's failure to satisfy the density requirement in its opinion or its brief.

6. When a trial court reviewing the decision of a zoning hearing board takes no additional evidence, this Court reviews the zoning hearing board's decision only for an abuse of discretion or errors of law. *In re Petition of Dolington Land Group*, 576 Pa. 519, 526, 839 A.2d 1021, 1026 (2003).

7. The Township's Board of Supervisors intervened before the trial court, and filed the brief we are considering in this appeal. As the Board joined that brief, we will, for the sake of simplicity, refer to the arguments raised in that document as the Board's arguments.

8. The Board argues in a footnote that while this Court disposed of the timeliness issue, the order does not address the Board's "alternate waiver issue." (Board's Br. at 4.) However, the Board misreads this Court's order. Concluding that this appeal was governed by Chapter 9 of the Pennsylvania Rules of Appellate Procedure, and that the Group had complied with all of the requirements of that Chapter, this Court ruled that the Group's Notice of Appeal was timely *as well as* proper. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board* (Pa.Cmwlth. No. 2224 C.D.2009, filed March 16, 2010).

This Court's order was correct on the merits. Pa. R.A.P. 1501(b) limits the scope of Chapter 15 of the Pennsylvania Rules of Appellate Procedure: "[t]his chapter does not apply to any appeal within the scope of: (1) Chapter 9 (appeals from lower courts)." Pa. R.A.P. 1501(b). Pursuant to Rule 901, Chapter 9 covers any appeal from a trial court, provided the appeal is not one of five exceptions listed in subsections (1)-(5), none of which are applicable to the present case. Pa. R.A.P. 901. Therefore, since the Group is before this Court on an appeal from the trial court, this case is governed by Chapter 9. This result is consistent with our Court's prior decisions. *See Sateach v. Beaver Meadows*

*Group, LLC v. Hamilton Township Zoning Hearing Board* (Pa.Cmwlth. No. 2224 C.D.2009, filed March 16, 2010).

The Board also argues that the Group waived its issues by failing to file a 1925(b) Statement. However, the Board is mistaken as to the purpose of Pa. R.A.P. 1925(b). Rule 1925(b) authorizes trial judges who feel they need clarification as to the basis of an appellant's appeal before drafting a Rule 1925(a) opinion to order an appellant to file a 1925(b) statement. Pa. R.A.P. 1925(b). As no such order appears in the record, the Group was under no obligation to file a 1925(b) statement.

■ Having concluded that the Group did not waive any issues, we turn to the merits of its appeal. The Group argues that because the Ordinance does not unambiguously state that the open space requirement must be satisfied by land located within the Township's borders, the Board was required to give the Ordinance the most liberal interpretation possible.

■ In an application for a special exception, the applicant has the burden of production and persuasion, and must prove to the zoning hearing board that the applicant's proposal meets all the requirements contained in the ordinance. *Bray v. Zoning Board of Adjustment,* 48 Pa.Cmwlth.

523, 410 A.2d 909, 910–11 (1980). Due to their expertise and experience, "a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference." *City of Hope v. Sadsbury Township Zoning Hearing Board,* 890 A.2d 1137, 1143 (Pa.Cmwlth. 2006). The general principle that zoning ordinances must be construed so as to give landowners the broadest possible use of their property gives way where the ordinance, read rationally and as a whole, clearly signals that a more restrictive meaning was intended. *Hess v. Warwick Township Zoning Hearing Board,* 977 A.2d 1216, 1221–22 (Pa.Cmwlth.2009). Although the Group is correct that zoning ordinances must be construed liberally, *Tennyson v. Zoning Hearing Board of West Bradford Township,* 952 A.2d 739, 744–45 (Pa.Cmwlth.2008), it is important to clarify precisely what the Group claims the Ordinance means when interpreted liberally. According to the Group, the Ordinance, when properly construed, does not just *permit,* but in fact *compels* the Board to consider land located outside its jurisdiction. We decline to adopt such a broad interpretation.

Subsection 8 of Section 150–34A provides that any development containing more than 12 townhouse units must pro-

*Zoning Hearing Board,* 676 A.2d 747, 751 (Pa.Cmwlth.1996) (applying Pa. R.A.P. 903(b) to an appeal from a trial court's review, conducted without taking additional evidence, of a zoning board determination). Chapter 9 does not require the appellant to include a statement of issues in its notice of appeal; thus, the Group did not violate any procedural rule by failing to present this Court or the Board with a description of the subject matter of the appeal.

We also note that the Board's argument is purely technical; the Group does not seek to introduce any argument or claim for the first time before this Court, and the Board has not suggested that it was prejudiced by the Group's failure to provide a statement of is-

sues. The Group presents only one issue on appeal, which is the same issue it appealed to the trial court—whether the Board abused its discretion by denying the Group's application on the grounds that only land contained within the Township may be used to satisfy the criteria for the special exception. Indeed, far from being surprised by the subject matter of this appeal, it appears that the Board's brief to this Court is identical to the brief that it filed with the trial court, except for the addition of the section arguing the waiver and timeliness issues. *(Compare* Board's Br. in Opposition to Group's Appeal at 7–13 *with* Intervenor Board's Br. in Opposition to Group's Appeal of the March 6, 2009, Decision of the Board at 3–10.)

vide for 300 square feet of open space per townhouse unit. Neither the definitions section of the Ordinance, nor Section 150–34A itself, contains a definition of the term "square feet," or otherwise explicitly indicates whether the open space calculation may include land not located within the Township. However, other sections of the Ordinance offer some guidance. According to the Ordinance's statement of purpose at Section 150–2, a central goal of the Ordinance is "to prevent the overcrowding of land" (Ordinance § 150–2); the statement of purpose accompanying the R–3 classification indicates that the Ordinance is also concerned with preserving the "rural nature" of the community and avoiding excessive development *"within the Township"* (Ordinance § 150–32D (emphasis added)). To that end, the Ordinance was enacted "with a view of," among other factors, "encouraging the most appropriate use of land throughout the Township." (Ordinance § 150–2.) The Township established the R–3 classification to balance the potential for overcrowding with the need to provide a variety of residential opportunities. (*See* Ordinance § 150–32.) It achieved this balance by permitting construction of higher density developments in residential districts, provided those developments were offset by sufficient open space to prevent excessive growth in population density. (*See* Ordinance § 150–34A(2), (8).) Section 150–34, which sets out the criteria for the townhouse community special exception, specifies that it applies *"[w]ithin* the R–3 District," which is located entirely within the Township. (Ordinance § 150–34 (emphasis added).) Thus, the Ordinance's language reflects an overarching concern with the effect of zoning and land use regulation *within the Township;* no mention is made of giving consideration to neighboring municipalities.

The interpretation of the Ordinance urged by the Group does not represent a liberal construction of ambiguous language contained in the Ordinance, but an impermissible departure from the plainly discernible intent of the enacting body. The special exception at issue in this case is a part of the Ordinance's R–3 classification. The language of the Ordinance indicates that the Township designed the R–3 classification to balance the need for "a mixture of residential opportunities" for the Township's residents with the need to "[l]imit development density . . . within the Township." (Ordinance § 150–32.) This can only be accomplished if the density and open space requirements used to balance higher density developments are satisfied by land within the borders of the Township. The Group, however, would have this Court interpret the Ordinance to require a dense development within Township to be offset by open space in other municipalities. This is contrary to the Ordinance's clearly established goal of managing development and population density *within the Township,* and is inconsistent with the terms of the Ordinance when read as a whole. We cannot endorse such a strained reading solely in the interest of giving the Ordinance a liberal construction or granting the Group a broader use of its land.

While the Board's decision to limit its consideration to the part of the Property located within the Township's borders had the effect of imposing a requirement that may not have been explicitly stated in the special exception, this Court has previously upheld decisions imposing such requirements, provided the additional requirements were plainly implied by the text of the ordinance when read as a whole. In *Hess,* we considered a zoning hearing board's interpretation of a provision in Warwick Township's zoning ordinance, which permitted shelters housing pets as

an accessory use in an R–1 Residential District. 977 A.2d at 1218–19. Although the zoning ordinance made no specific mention of a limitation on the number of animals that could be housed in such a structure, the zoning hearing board concluded that a shelter housing twenty-one large dogs was not a valid accessory use under the terms of the zoning ordinance. *Id.* at 1219. In interpreting Warwick Township's zoning ordinance, this Court concluded that the R–1 Residential classification was intended to provide some limitation on the maximum permitted intensity of land use. *Id.* at 1222. Based on this reading of Warwick Township's zoning ordinance, this Court held that the only rational interpretation of the disputed provision had to include an implicit limit on the number of animals that could be sheltered as an accessory use of a residential property. *Id.* The Board's refusal in the present case to consider the part of the Property located in Abbottstown and Berwick is no more of an interpretive leap, given the Ordinance's express goals of "encouraging the most appropriate use of land throughout the Township" and "prevent[ing] the overcrowding of land . . . [and] avoid[ing] undue concentration of population." (Ordinance § 150–2.)

■ Our interpretation of the Ordinance is consistent with the limits inherent in the zoning authority held by municipalities. Municipalities are creations of the Commonwealth and possess no power beyond that which is expressly delegated to them. *In re Realen Valley Forge Greenes Associates,* 576 Pa. 115, 132–33, 838 A.2d 718, 729 (2003). In the context of zoning decisions, Section 501 of the Pennsylvania Municipalities Planning Code (MPC) [9] grants municipalities the authority to control development within their borders. *See* 53 P.S. § 10501 (making multiple references to the authority to control development "within the municipality"); *see also King v. Perkasie Borough Zoning Hearing Board,* 122 Pa.Cmwlth. 510, 552 A.2d 354, 355–56 (1989) (interpreting Section 501 of the MPC to forbid extraterritorial control by a municipality on the grounds that, under the MPC, a municipality's powers stop at its border). Pursuant to Section 619.1(d) of the MPC,[10] municipalities may exercise extraterritorial control when they enter into a specific written agreement with a neighboring municipality. 53 P.S. § 10619.1(d); *Baronoff v. Zoning Board of Adjustment,* 385 Pa. 110, 118, 122 A.2d 65, 68 (1956). While the MPC does not state that municipalities are precluded from considering extraterritorial matters when making zoning decisions, numerous sections of the MPC indicate that there is an underlying assumption that zoning decisions can be made based on factors within the municipality's jurisdiction. *See, e.g.,* Section 605 of the MPC, 53 P.S. § 10605 (providing that provisions of a zoning ordinance may be classified so that different requirements apply to different districts "of the municipality"); Section 503(4.1) of the MPC, 53 P.S. § 10503(4.1) (granting municipalities the authority to impose certain requirements "uniformly throughout the municipality"). The limited nature of municipal authority, and the MPC's underlying assumption that municipalities will confine their efforts to furthering the well-being of their own constituencies, indicate that, in general, zoning ordinances should be construed so as to permit consideration only of land located within the borders of the enacting body.

■■ Municipal authority to regulate land use and development is further limit-

---

9. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10501.

10. Added by the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10619.1(d).

ed by the constitutional source of that authority, the police power, which grants municipalities the authority to enact zoning to protect the "public health, safety, morals or general welfare" of the community. *Ward's Appeal,* 289 Pa. 458, 462–63, 137 A. 630, 631 (1927). If an ordinance exceeds either the scope of the municipality's authority under the MPC, or the limits of its police power, the ordinance is invalid. Robert S. Ryan, Pennsylvania Zoning Law and Practice § 3.1.2 (2001). The Commonwealth's delegation of police powers to a municipality creates duties as well as rights; municipalities must exercise their police powers for the good of their constituents and, in general, may not irretrievably surrender that obligation to a third party. *G.C. Murphy Co. v. Redevelopment Authority,* 458 Pa. 219, 227, 326 A.2d 358, 363–64 (1974) (quoting *City of McKeesport v. The McKeesport and Reynoldtown Passenger Ry.,* 2 Pa.Super. 242, 247 (1896) ("The state cannot bargain away its right to exercise at all times its police power, nor can a municipality, to which is delegated the right to exercise the state's police power over streets and highways, enter into any contract by which the free exercise of the power granted can be abridged, limited or destroyed.")); *Helicon Corporation v. Brownsville,* 68 Pa.Cmwlth. 375, 449 A.2d 118, 120 (1982) ("[I]t is well-settled that a municipality's police power, which protects the general welfare and the public interest, cannot be abridged by contract."); 35 Pennsylvania Law Encyclopedia, Municipal Corporations § 413 (2007) ("When police power has been delegated by the state to a municipality, the municipality cannot, beyond recall, surrender it or divest itself thereof by contract or otherwise. The municipality cannot enter into any contract by which the free exercise of the power granted would be abridged, limited or destroyed." (footnote omitted)).

The MPC delegates the authority to enact zoning ordinances to municipalities with the understanding that the authority will be used to allow for population growth and to provide for a variety of residential opportunities, while avoiding excessive population density. Section 604(1), (4) of the MPC, 53 P.S. § 10604(1), (4). Pursuant to that duty, the Board refused to allow the Group to offset a development located in the Township by providing for open space in Abbottstown and Berwick. We cannot say that this refusal was an abuse of discretion. Responsibility for the well-being of the citizens of Abbottstown and Berwick belongs to their own governing bodies; bound by the limits of the police power, the Board has neither the duty nor the authority to exercise its zoning power to benefit the citizens of neighboring municipalities.

If compelled to grant the Group's application, the Board will be unable to ensure that the Group does not develop the open space in the future. Under the Group's current plan, the majority of the open space, which the Ordinance declares necessary for the welfare of the Township and its residents, would be located outside of the Board's jurisdiction and, thus beyond its control. *Baronoff,* 385 Pa. at 118, 122 A.2d at 68. If the application is granted, the Board would be forced to entrust the welfare of the Township to the discretion of the zoning hearing boards of Abbottstown and Berwick, or to the good intentions attributed to the Group by its counsel.[11] We hold that the Board, in refusing

---

11. Although the Group has indicated through its attorney that it would agree not to develop the land, (Group's Br. at 8–9), no sworn testi-mony was ever presented to support this representation. Thus this argument is supported only by an unsworn representation of counsel,

to surrender either the ability or the authority to protect the welfare of the Township, did not commit a reversible error.

In light of the preceding discussion, the Board did not abuse its discretion in requiring the application for special exception to satisfy the Ordinance's requirements using only land located within the borders of the Township.[12] Accordingly, we affirm the trial court's order.

### ORDER

**NOW,** September 1, 2010, the order of the Court of Common Pleas of Adams County in the above-captioned matter is hereby **AFFIRMED.**

and the trial court and the Board were correct not to consider it. *North Chestnut Hill Neighbors v. Zoning Board of Adjustment of Philadelphia*, 928 A.2d 418, 424 n. 8 (Pa. Cmwlth.2007).

12. *DeFeo v. Brookhaven Borough*, 3 Pa. Cmwlth. 377, 283 A.2d 505 (1971), does not compel a different result. *DeFeo* involved a plan to develop a piece of property which spanned two municipalities. The applicant planned to construct a significant development on the larger portion of the land, while the smaller portion would remain unchanged except for the installation of an access road. This Court remanded the matter to the trial court to take additional evidence because there was no factual record from the Borough Council. Despite remanding the case, however, our Court went on to state that, for the purpose of determining whether building the road constituted "land development" under the MPC, the planned development must be viewed as a whole. *Id.* at 507.

*DeFeo* does not compel us to require the Board to consider the extraterritorial land for

several reasons. First, this Court has already observed that *DeFeo's* discussion of multi-municipality developments is dicta. *King*, 552 A.2d at 356. Second, *DeFeo* concerned the application of Section 507 of the MPC, a statewide statute. In this case, by contrast, we are concerned with the effect of a local zoning ordinance which, by its own language and by the language of the authorizing statute, the MPC, is concerned with the effect of development within the borders of the enacting municipality. Third, *DeFeo* involved a request for approval of a development plan, not an application for a special exception.

This result is also consistent with the analysis used in other types of zoning cases. In *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977), for example, the seminal "fair share" case, the Pennsylvania Supreme Court stated that local political units must consider the needs of all the people who might desire to live *within the borders* of the municipality. *Id.* at 189, 382 A.2d at 108.