# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Bloomfield Citizens Council,   :
Inc., a Pennsylvania Corporation,   :
and Victoria and Justin Huston,   :
   :
          Appellants   :
   :
        v.   :   No. 774 C.D. 2015
   :
Zoning Board of Adjustment of the   :   Argued:  November 16, 2015
City of Pittsburgh and City of   :
Pittsburgh and UPMC Shadyside   :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED:  December 14, 2015**

The Bloomfield Citizens Council, Inc. (Citizens Council) and Victoria and Justin Huston (together, "Objectors") appeal from an Order of the Court of Common Pleas of Allegheny County (trial court) dismissing Objectors' appeal from the Decision of the Zoning Board of Adjustment (ZBA) of the City of Pittsburgh (City).  The ZBA denied, as untimely, Objectors' protest appeal alleging that the site plan approved by the City's Bureau of Building Inspection (Bureau) for the installation of a transformer to power the Luna Parking Garage (Garage) constructed by UPMC Shadyside (UPMC) as part of its Institutional Master Plan

(Master Plan) violated the City's Zoning Code. The ZBA further found that UPMC had a vested right in the approvals and permits issued by the City for the installation of the transformer. On appeal, Objectors argue that the installation and location of the transformer violates the City's Zoning Code and that their appeal was timely; therefore, UPMC does not have a vested right to install the transformer. Because we conclude that substantial evidence supports the ZBA's finding that Objectors' protest appeal was untimely filed and that UPMC had a vested right in the approvals and permits issued for the installation of the transformer, we affirm.

The facts in this matter, as found by the ZBA, are as follows. UPMC owns 8 acres (Property) on Baum Boulevard, which is located in the Educational/Medical Institutional (EMI) zoning district in the City's Bloomfield neighborhood. The Property is located between Cypress Street and railroad tracks, adjacent to a residential zoning district, and includes steep slopes which descend to the lower level of the Property from Cyprus Street and Baum Boulevard. In January 2013, after UPMC sought community input, the City approved certain changes to UPMC's Master Plan, which included construction of the Garage. On August 1, 2013, the Bureau approved the development plans for the necessary building permits for the Garage. The development plans contained approximately 100 detailed sheets, one of which was the Electrical Site Plan depicting the location along Cypress Street of the transformer "that would provide electrical service to the [G]arage." (ZBA Decision, Findings of Fact (FOF) ¶ 10.) The Bureau "approved each plan sheet individually, including the Electrical Site Plan on sheet E2." (FOF ¶ 9.)

2

As identified in the Electrical Site Plan, the transformer will be: (1) encased in a grey metal cabinet measuring eight feet in width and length and four feet in height; (2) placed on a 20 by 20 foot flat concrete slab; and (3) surrounded by a six foot ornamental opaque fence with screening on three sides. The access gate will face Cypress Street, six foot evergreen trees will surround the three-sided fencing, and evergreens will also be located along Cypress Street. Duquesne Light owns the transformer and requires that it be accessible by crane. The proposed site along Cypress Street is the only flat part of the Property that will accommodate the requirements for the transformer. Relocating the transformer would cause UPMC to incur additional costs of about $150,000.

UPMC's Project Manager met with the President of the Citizens Council in February 2014 to discuss the transformer installation along Cypress Street. The Project Manager informed the President that UPMC "was not willing to relocate the transformer from the identified Cypress Street location." (FOF ¶ 27.) After the February 2014 meeting, UPMC spray painted the exact location on the Property along Cypress Street where the transformer would be located and put a stake in the middle of the marking. UPMC then spent $40,000 to construct the transformer pad and the "pad was installed in a manner consistent with the plans" as approved by the City. (FOF ¶ 30.)

On May 5, 2014, after the President of the Citizens Council visited the City's zoning office and reviewed the site plans for the proposed Garage and transformer, Objectors filed a protest appeal challenging the location of the transformer. On May 7, 2014, the Bureau issued a stop work order. On May 22,

3

2014, the President of the Citizens Council presented a written request to the City's Office of Open Records pursuant to the Right-to-Know Law[1] (RTKL) seeking a copy of the site utility plan for the Garage, including the Electrical Site Plan that was submitted to the Bureau. On June 26, 2014, the City's Office of Open Records denied the RTKL request on the basis that "the requested information was not public because it constitutes a building plan or infrastructure that exposes or creates vulnerability through disclosure." (FOF ¶ 35.)

On June 12, 2014, the ZBA held a hearing on Objectors' protest appeal. Objectors and UPMC presented testimony and documentary evidence in support of their respective positions. Community members and a City Councilwoman testified in support of Objectors' protest appeal and two community organizations submitted letters in support of the appeal. After the close of the hearing and the record, the ZBA granted Objectors' motion to supplement the record to include the June 26, 2014 denial of the RTKL request, which the ZBA reviewed in reaching its Decision. (FOF ¶¶ 48-49.) Based on the testimony and evidence presented, the ZBA denied Objectors' protest appeal because: (1) Objectors' protest appeal was filed more than 30 days after they were aware or should have been aware of the transformer's location; and (2) UPMC has a vested right in the City issued approvals and permits. The trial court affirmed.[2]

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.

[2] Our review in a zoning case, where the trial court has taken no additional evidence, "is limited to determining whether the [ZBA] committed a manifest abuse of discretion or an error of law." Valley View Civic Association v. Zoning Board of Adjustment, 462 A.2d 637, 639 (Pa. 1983). The ZBA will be found to have "abused its discretion only if its findings are not

*(Continued…)*

4

The issue that first must be addressed is whether the ZBA abused its discretion by finding that Objectors' protest appeal was untimely. Objectors argue that their protest appeal was timely because it was filed less than 30 days after learning of the approval for the transformer. Objectors assert that although they knew that the transformer would be located along Cypress Street, the *exact* proposed location was not disclosed by UPMC's Project Manager during the February 2014 meeting and he did not mention any approvals for the transformer location. Objectors contend that the marking that was made after this meeting was spray painted over snow. Objectors argue that there was no way for any member of the public to know about the location or approval for the transformer because the Electrical Site Plan was under seal with the City until it was introduced at the hearing. Objectors contend that their attempt, via a RTKL request, to obtain the site plan before the ZBA hearing was rejected. Objectors argue that the President of the Citizens Council believed, after the February 2014 meeting, that the location was a fluid situation because the transformer was not yet installed. Objectors contend that it was only when the President went to the City's zoning office on May 5, 2014, that Objectors learned of the exact location of the transformer and they filed the protest appeal on the same day.

Objectors argue further that, pursuant to Section 401 of the "Rules of Procedure of the Zoning Board of Adjustment of the City of Pittsburgh," an appeal must be filed within 30 days of when the appellant first had notice of the pertinent

supported by substantial evidence[,] . . . mean[ing] such relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." Id. at 640.

decision or approval. Objectors assert that the ZBA abused its discretion by finding the appeal untimely because the standard is not whether an appellant was aware of the location, but it is *notice of an approval* that triggers the 30-day appeal period. Objectors contend that there is no evidence that Objectors had notice of an approval for the transformer location before May 2014.

Although Objectors rely on the "Rules of Procedure of the Zoning Board of Adjustment," the appeal period for zoning matters is set forth in Section 923.02.D of the Zoning Code, which provides in pertinent part:

> Appeals to the Board may be taken by any person aggrieved, or the head of any department affected by a decision of the city official from whose action the appeal is taken. Each appeal shall be taken within thirty (30) days of the determination, action, or decision.

(Section 923.02.D of the Zoning Code.) As determined by the ZBA, there were no appeals filed challenging the Bureau's August 1, 2013 approval of UPMC's development plans, which included the Electrical Site Plan, "within 30 days of the plan approval or within 30 days of the start of construction." (ZBA Decision, Conclusions of Law (COL) ¶ 11.) Objectors do not dispute that they did not appeal the Bureau's approval of the development plans in August 2013.

With respect to the February 2014 meeting between UPMC's Project Manager and the President of the Citizens Council, a review of the testimony before the ZBA supports the finding that Objectors knew or should have known that the transformer would be located on Cypress Street during this meeting or shortly thereafter. The President testified that she and the community knew at the February 2014 meeting that a transformer was coming into the neighborhood and

6

that UPMC wanted to locate the transformer somewhere on Cypress Street. (Hr'g Tr. at 35, 37, R.R. at 53a, 55a.) The President's testimony reveals further that it was Objectors, not UPMC, that wanted the location of the transformer to be negotiable. The President repeatedly testified that: (1) it was Objectors who "were trying to get it to be negotiable"; (2) the Project Manager "was making that it wasn't negotiable"; and (3) it was Objectors' "interpretation [that] it was negotiable" not the Project Manager's. (Hr'g Tr. at 39, R.R. at 57a.)

UPMC's Project Manager testified that he informed the President of the Citizens Council and others in attendance at the February 2014 meeting that UPMC was "not willing to relocate the transformer." (Hr'g Tr. at 58, R.R. at 76a.) The Project Manager testified further that, after the February 2014 meeting, UPMC moved forward with the Garage project, which included the location of electrical service and the transformer. (Hr'g Tr. at 59, R.R. at 77a.) This included installing the pad upon which the transformer would be located at a cost of $40,000. (Hr'g Tr. at 59, R.R. at 77a; FOF ¶ 29.) Finally, the Project Manager testified that he volunteered at the February 2014 meeting to physically mark the site where the transformer would be located; therefore, shortly after the meeting, UPMC spray painted the area and put a stake in the ground marking where the center of the transformer would be located on the Property. (Hr'g Tr. at 60-61, R.R. at 78a-79a.)

This testimony supports the ZBA's determination that Objectors were aware or should have been aware in February 2014 that the transformer would be located along Cypress Street. Objectors' assertion that they did not know the exact

7

location on Cypress Street or did not have notice of the approval for the installation of the transformer until May 2014 does not negate the fact that they were aware in February 2014 that UPMC was firm in its intention that the transformer would be placed on Cypress Street in accordance with the Electrical Site Plan that was approved by the Bureau on August 1, 2013.

Notwithstanding our conclusion that the ZBA did not abuse its discretion in finding that Objectors' protest appeal was untimely, we now turn to the issue of whether UPMC satisfied the criteria for a vested right in the approvals and permits issued by the City for the installation of the transformer. Objectors contend that UPMC did not satisfy all the requirements for a vested right; specifically: (1) UPMC did not exercise due diligence in attempting to comply with the Zoning Code because it did not have a fixed final location for the transformer; (2) there was no good faith since UPMC misrepresented the location; (3) UPMC did not expend substantial funds; and (4) the evidence shows that individual property rights are adversely affected by granting UPMC permission to place the transformer along Cypress Street.

In the seminal case of Petrosky v. Zoning Hearing Board of Upper Chichester Township, 402 A.2d 1385 (Pa. 1979), our Supreme Court set forth five factors for determining whether a vested right has been acquired in a permit:

    1. [permit holder's] due diligence in attempting to comply with the law;

    2. [permit holder's] good faith throughout the proceedings;

    3. the expenditure of substantial unrecoverable funds;

4. the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

5. the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

Id. at 1388.  The property owner is not required to establish all five factors in order to be entitled to the vested right.  Mirkovic v. Zoning Hearing Board of Smithfield Township, 613 A.2d 662, 667 n.2 (Pa. Cmwlth. 1992).

Here, the record supports the finding that UPMC met the criteria for a vested right to locate the transformer along Cypress Street in accordance with the approved Electrical Site Plan.  First, as we have concluded, Objectors' protest appeal was untimely; therefore, there were no timely appeals challenging the issuance of the permit for the transformer's installation.  Second, UPMC exercised due diligence and good faith.  It presented its Master Plan to the community prior to approval and completed the steps necessary to acquire approval by the City.  (COL ¶¶ 5-6.)  Third, UPMC relied upon the approvals and permits issued by the City and expended funds to install the transformer.  (COL ¶ 7.)  Although the fact that $40,000 appears to be a small amount to expend when the cost of the entire Master Plan is considered, it is still a large sum to spend to begin the process of completing one facet of the project.

Finally, Objectors were unable to prove that the installation of the transformer at the Cypress Street location would adversely affect their property rights or the public's health, safety, or welfare.  As determined by the ZBA, Objectors "did not demonstrate with any degree of probability that the transformer

9

would represent a dangerous condition as compared with the many other transformers . . . that safely exist in the vicinity of the Subject Property and throughout the City." (COL ¶ 12.) The ZBA also concluded that "Objectors' aesthetic concerns in regard to the location of the transformer also did not address its limited visibility within the . . . protective cabinet, fencing and landscaped screening." (COL ¶ 13.) Thus, the ZBA did not err by concluding, based on its findings, that UPMC obtained a vested right in the approvals and permits issued by the City for the installation of the transformer on Cypress Street.

For the foregoing reasons, the trial court's Order is affirmed.[3]

_____

[3] Although not necessary for the disposition of this appeal, we further conclude that the ZBA did not err by finding that the location of the transformer did not violate certain sections of the Zoning Code. First, Objectors contend that the location of the transformer violates Section 922.04.E.6.g.ii because it is visible from the Property line. Section 922.04.E.6.g.ii of the Zoning Code provides that "[a]ll utility equipment including . . . transformers and electrical switches *shall not be visible* from a property line . . . or should be located inside of the principal structure except where specifically prohibited by the utility." (Emphasis added.) Objectors argue that screening a transformer via fencing and landscaping does not satisfy the requirement that the transformer not be visible from a property line. This is a matter of interpretation. It is well settled that, "[d]ue to their expertise and experience, 'a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference.'" Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board, 4 A.3d 788, 792 (Pa. Cmwlth. 2010) (quoting City of Hope v. Sadsbury Township Zoning Hearing Board, 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006)). The ZBA determined that the transformer satisfied the requirement that it "*[shall] not be visible* from the property line" in Section 922.04.E.6.g.ii because the transformer will be within a protective cabinet that *will not be visible* because it will be screened by fencing and evergreens. (COL ¶ 21B.) (Emphasis added.) The ZBA did not interpret the Zoning Code to require that a surrounding property owner must not be able to see the area at all where the transformer is located. This is a reasonable interpretation. If the Zoning Code was interpreted in the manner that Objectors request, all transformers would have to be inside buildings or inside a structure built to house the transformer. Although Section 922.04.E.6.g.ii provides that a transformer should be located inside of a principal structure, there is an exception if such placement is specifically prohibited by the utility. Here, Duquesne Light needed to access the transformer by crane; therefore, it could not be located inside the Garage.

*(Continued…)*

_____
**RENÉE COHN JUBELIRER, Judge**

_____

Second, Objectors contend that installation of the transformer requires a special exception as a "Utility (Limited)" use in the EMI Zoning District pursuant to Section 911.02 of the Zoning Code. Section 911.02 of the Zoning Code defines "Utility (Limited)" to mean "services and facilities of agencies that are under public franchise or ownership to provide services that are essential to support development and that involve only minor structures, such as but not limited to poles and lines" (permitted as a special exception in EMI Zoning District). Objectors argue that the transformer is owned by Duquesne Light on property located in an EMI Zoning District; therefore, it needs to acquire a special exception for its use. This would be correct if the transformer was the primary use of the Property; however, the transformer is an accessory use in accordance with Section 912.01 of the Zoning Code, which provides that an "accessory use or structure" must:

(1) Be subordinate to and serve the primary use or structure;
(2) Be subordinate in area, extent and purpose to the primary use or structure served;
(3) Contribute to the comfort, convenience or necessity of occupants of the primary use or structure served; and
(4) Be located on the same zoning lot and in the same zoning district as the primary use.

Section 912.01 of the Zoning Code. Here, the installation of the transformer to provide electrical service to the Garage, the primary use, renders the transformer an accessory use.

Finally, Objectors contend that because the transformer is located on property across the street from a residential zoning district, the transformer, as an accessory use, cannot be located in the side yard setback area, which must be a minimum of 15 feet pursuant to Section 916.02.A.3 of the Zoning Code. Resolution of this argument is another issue of interpretation. Pursuant to Section 925.06.A.11 of the Zoning Code, "[u]tility lines, wires and associated structures, such as power poles" are permitted to be located within the required 15 foot setback for side yards. In this matter, the ZBA determined that Section 925.06.A.11 permits the transformer, as an associated structure to utility lines, to be located within the 15 foot side yard setback requirement. (COL ¶ 20.) This interpretation is reasonable in light of the purpose of the transformer, which is to provide electrical service to the Garage.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Bloomfield Citizens Council,     :
Inc., a Pennsylvania Corporation,     :
and Victoria and Justin Huston,     :
    :
             Appellants     :
    :
           v.     :    No. 774 C.D. 2015
    :
Zoning Board of Adjustment of the     :
City of Pittsburgh and City of     :
Pittsburgh and UPMC Shadyside     :

## **O R D E R**

**NOW**, December 14, 2015, the Order of the Court of Common Pleas of Allegheny County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**