# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

329 Prospect Avenue                     :
Corporation                             :
                                        :
                                        : No. 1635 C.D. 2018
              v.                        :
                                        :
                                        : Argued: September 17, 2019
State College Borough                   :
Zoning Hearing Board                    :
                                        :
              v.                        :
                                        :
State College Borough,                  :
                    Appellant           :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: December 12, 2019


State College Borough (Borough) appeals from the November 19, 2018 order of the Court of Common Pleas of Centre County (trial court) reversing the decision of the State College Borough Zoning Hearing Board (Board), which upheld a violation relating to an improper fraternity house use.


## Background

The 329 Prospect Avenue Corporation (Landowner) is the owner of property located at 329 East Prospect Avenue (Property) in State College, Pennsylvania. (Board Findings of Fact (F.F.) No. 1.) The Property is located in the

R-2 Residential zoning district and contains a two-story structure that has been used as the location of a fraternity known as Sigma Alpha Mu, Mu Lambda Chapter (Sigma Alpha Mu). (F.F. Nos. 3-4.) On May 18, 2017, the Vice President for Student Affairs at the Pennsylvania State University (Penn State) sent a one-sentence letter (Penn State Letter) to the Borough purporting to advise the Borough that Penn State had withdrawn recognition of Sigma Alpha Mu as a fraternity and identifying the Property as the place where the fraternity resided. (F.F. No. 11.) In response to the Penn State Letter, on July 24, 2017, the Borough sent a letter to Landowner (Borough Letter) notifying it that, based upon the action of Penn State, Sigma Alpha Mu fraternity was no longer a recognized fraternity pursuant to the Borough zoning ordinance (Zoning Ordinance) and, therefore, the Property was in violation of the zoning ordinance. (F.F. No. 12.)

Thereafter, on August 16, 2017, the acting director of Centre Region Code Administration sent a letter to Landowner (Code Administration Letter) advising it that the Property was in violation of the local building safety and property maintenance code for failing to possess a rental housing permit. (F.F. No. 13.) The Code Administration Letter noted that the director had observed people moving into the building who identified themselves as members of Sigma Alpha Mu, but that the Property did not possess a valid rental permit. (Reproduced Record (R.R.) at 84a.) Subsequently, on August 17, 2017, the Borough's Zoning Officer issued a notice of violation letter to Landowner alleging the Property was being used as a fraternity house in violation of Section 201 of the Zoning Ordinance.[1] (F.F. No. 14.) Notably,

---

[1] Section 201 of the Zoning Ordinance provides, in pertinent part, the following definition of fraternity house:

> **Fraternity House**. An organized living arrangement within a building having common dining and kitchen facilities and multiple bedrooms where residents are students of the Pennsylvania State University (hereinafter called University) and are members of a

2

the notice of violation stated that although a fraternity house was permitted at the Property, no documentation had been submitted to demonstrate that the current occupant met the fraternity house definition. (F.F. No. 14; R.R. at 86a.) The Zoning Officer based her determination on information she received from the Code Administration Letter and the Penn State Letter. (F.F. No. 16.)

Landowner appealed the Zoning Officer's determination to the Board on the grounds that (1) the Property had been continuously used and occupied as a fraternity house prior to the adoption of the current definition of "Fraternity House" in the Zoning Ordinance and, therefore, constituted a lawful nonconforming use of the Property; and (2) the definition of "Fraternity House" in the Zoning Ordinance was invalid because the definition impermissibly delegated zoning and decision-making authority to a third-party entity, *i.e.*, Penn State. (R.R. at 64a-67a.)

Following the hearing, the Board made findings of fact and conclusions of law. The Board found that the structure on the Property had been built after the Board granted a special exception in 1989. (F.F. No. 6.) The Property was purchased by Landowner from Alpha Chi Rho Educational Foundation, Inc. in 1996. (F.F. No. 7.) At the time of that transaction, Kappa Alpha Fraternity occupied the Property. *Id.* The Board found that Sigma Alpha Mu fraternity had continuously

---

University recognized fraternity or sorority. University recognition shall be determined by the University through its procedures as may be established from time to time. A recognized fraternity or sorority shall only be in a single location. Property owners seeking designation as a fraternity must submit written confirmation from the University that the sorority or fraternity is recognized. In addition to University recognition, a fraternity or sorority is only permitted in buildings where fraternity occupancy is either currently permitted under the zoning ordinance or is a validly existing non-conforming use as a fraternity or sorority. Fraternities shall be subject to other appropriate municipal regulations.

Zoning Ordinance, §201, R.R. at 157a.

occupied the house on the Property since 1998. (F.F. No. 8.) Beginning in 1998, Landowner entered into a series of master leases with Sigma Alpha Mu, which had in turn entered into an agency agreement with Greek Housing Services Corporation to put in place leasing contracts with individual fraternity members. (F.F. Nos. 9-10.) The Board observed that the Borough relied on Penn State's determination regarding whether a fraternity was recognized, and that the Borough was unaware of the procedures Penn State followed to determine whether to terminate its recognition of a fraternity, including whether Penn State afforded the fraternity a hearing or appeal process. (F.F. Nos. 18-19.)

The Board noted that the Property was located in the R-2 Residential zoning district and had been used as a fraternity house since 1989. The Board concluded that although a fraternity house was not permitted in the R-2 district, the Zoning Ordinance recognized that a fraternity house was permitted on the Property as a nonconforming use. (Board decision at 5.) The Board determined that the Zoning Ordinance that created the R-2 district was enacted in 1959 and that a "Fraternity House" definition was first added to the Zoning Ordinance in 1980. *Id.* The Board observed that although the definition of "Fraternity House" that existed before 2010 required fraternities to be "affiliated" with Penn State, the 2010 amendment changed the definition to require that fraternities have Penn State "recognition." *Id.* Accordingly, the Board concluded that since 2010, in order for a property's use to qualify as a "Fraternity House," the group occupying the house must be recognized by Penn State as a valid fraternity. *Id.*

Before the Board, Landowner argued that the 2010 "Fraternity House" definition in the Zoning Ordinance did not apply to it because a fraternity was established on the Property before 2010 and, therefore, use of the Property as a fraternity was a nonconforming use. *Id.* at 6. Conversely, although the Borough conceded that use of the Property as a "Fraternity House" was a nonconforming use

4

because fraternity houses were not permitted uses in the R-2 district, it argued that fraternity houses require Penn State recognition and once that recognition is lost, so is the nonconforming status of the Property. *Id.*

The Board determined the Zoning Officer correctly applied the Zoning Ordinance when she issued her notice of violation. *Id.* at 7. The Board concluded there was "no dispute that the [P]roperty was established prior to the enactment of the applicable zoning regulations and that it enjoyed nonconforming status as a fraternity house" in the R-2 district, and that it was "also undisputed that the [Zoning Ordinance] require[d] [Penn State] recognition of a fraternity for the property in which it [was] located to qualify as a 'Fraternity House.'" *Id.* at 7-8. The Board determined that Sigma Alpha Mu was recognized by Penn State up until May 18, 2017, when its recognition was revoked. *Id.* at 8. The Board explained that "[d]espite that fact, the [P]roperty continued to be occupied by a group of individuals. Because they were not recognized by [Penn State], their use of the [P]roperty no longer amounted to a fraternity house." *Id.* With regard to Landowner's nonconforming use argument, the Board held that the Borough had a legitimate interest in preserving the qualities of single-family residential neighborhoods, that it was a "proper exercise of the Borough's police powers to preserve an environment where it [was] safe and appropriate for people to be able to raise a family," and that it "goes without saying that a group of young people living in a communal setting, without controls, is prone to behavior that is less than appropriate for a family setting." *Id.* The Board noted that the Borough must have the ability to amend definitions to address changes in society that occur over time and that to hold otherwise would permit Landowner to change from one nonconforming use to another. *Id.*

With respect to the substantive validity challenge, the Board concluded that the need to regulate student housing was a legitimate exercise of police power

5

and that the requirement that a fraternity be recognized by Penn State was rationally related to the interests that the Borough sought to address. *Id.* at 11. The Board determined that fraternities have a special status due to the control exercised by universities over them and that, without university recognition, a fraternity loses its special status. *Id.* The Board also determined that the Borough could delegate its authority to a government-related entity, such as Penn State. *Id.* at 12.

In sum, the Board concluded that in order to qualify as a Fraternity House, an occupant must be recognized as a fraternity by Penn State, Sigma Alpha Mu lost its recognition on May 18, 2017, and Landowner's use no longer qualified as a "Fraternity House" under the Zoning Ordinance. *Id.* at 12. The Board further concluded that the continued occupancy of the Property by students after the fraternity lost its recognition by Penn State violated the requirements of the Zoning Ordinance, that the Zoning Officer correctly determined that the use of the Property did not meet the fraternity house definition, which, consequently, rendered that use illegal, and that the occupants were required to vacate the premises. *Id.* at 13.

Landowner appealed the Board's decision to the trial court raising the same issues it raised before the Board. In addressing Landowner's nonconforming use argument, the trial court relied on *In re Appeal of Miller*, 515 A.2d 904 (Pa. 1986), in which the Pennsylvania Supreme Court rejected a township's attempt to extinguish lawful preexisting uses on a property through amendment of definitions in the township's zoning ordinance. (Trial court op. at 6.) The trial court concluded that the Board's conclusion that the Zoning Ordinance required Penn State recognition of a fraternity in order to qualify as a "Fraternity House" ignored the law of nonconforming uses and the vested rights of Landowner. *Id.* at 6. According to the trial court, determining whether Landowner's use of the Property qualified as a lawful nonconforming use required reference to the ordinance at the time the use was established. *Id.* The trial court concluded that "[a]dherence to subsequently

6

enacted, more restrictive, ordinance provisions, even definitional provisions therein, would run afoul of the well-established law protecting nonconforming preexisting uses." *Id.* at 6-7.

The trial court explained that "[a]t the time use of the Property as a fraternity house was first established, and a special exception was granted, the definition of '[F]raternity [H]ouse' did not include any requirement that a fraternity have recognition from Penn State" or any other third party. *Id.* at 7. Although the Board stated that Sigma Alpha Mu was accorded Penn State recognition up until May 18, 2017, in an apparent attempt to align the present definition of Fraternity House with the acknowledged preexisting, nonconforming use, the trial court concluded that this finding was not supported by substantial evidence in the record. *Id.* at 7. While the building on the Property was constructed in 1989 for occupancy by members of the Sigma Alpha Mu fraternity, the trial court determined there was no evidence in the record that Sigma Alpha Mu was officially recognized by Penn State at that time or at any time thereafter. *Id.* According to the trial court, "[t]he first time [Penn State] recognition appear[ed], from the record evidence, to have been considered *vis-à-vis* use of the Property was in connection with the [May] 18, 2017 letter from Penn State informing the State College Borough Manager that Penn State had withdrawn recognition from Sigma Alpha Mu." *Id.* The trial court noted that the Penn State Letter did not state when, or whether, any such recognition had been granted in the first instance. *Id.* Therefore, the trial court held that the idea that Penn State recognition had always been part of the use and was "part and parcel of the non-conforming use [was] not borne out by the record." *Id.*

The trial court also explained that when the Zoning Ordinance was first adopted in the 1950s, there was no definition of "Fraternity House," and that a definition for Fraternity House was not added to the Zoning Ordinance until 1980. *Id.* at 8. The trial court observed that although "Fraternity House" was previously

defined in terms of Penn State "affiliation," it was not until 2010 that the Borough adopted the stricter "Fraternity House" definition requiring Penn State "recognition." *Id.* Ultimately, although the trial court agreed that the Borough asserted a legitimate interest and that it was an appropriate exercise of the Borough's police powers to adopt ordinances that preserve desired qualities in residential neighborhoods, it determined the issue before it was whether the Borough could "extinguish an existing, lawful nonconforming use through adoption of such ordinance." *Id.* Concluding that the Borough could not extinguish a lawful nonconforming use, the trial court reversed the Board's decision. *Id.* Because it concluded that the Property qualified as a preexisting nonconforming use, the court declined to address Landowner's argument that the Zoning Ordinance was substantively invalid because it constituted an unlawful delegation of the Borough's police powers. *Id.*

**Discussion**

On appeal,[2] the Borough argues that (1) the trial court erred in relying on *Miller*, by holding that the refinement of the definition of "Fraternity House" was designed to extinguish the lawful preexisting use status of the Property; (2) the trial court erred in treating the Property as though it enjoyed a lawful nonconforming use status, when it actually existed lawfully as a special exception prior to Sigma Alpha Mu losing Penn State recognition; (3) the trial court exceeded its authority by substituting its findings for that of the Board; and (4) since the trial court did not address the substantive validity challenge, it is improper for this Court to address the

---

[2] Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788, 792 n.6 (Pa. Cmwlth. 2010).

8

issue.[3] The Board makes similar arguments in support of the Borough's appeal, arguing that (1) the trial court erred when it held that the Board's decision ignored the law of nonconforming uses and the vested property rights of Landowner; and (2) the trial court erred in relying on *Miller*.

We first address whether the trial court erred in treating the Property as a lawful nonconforming use instead of as a special exception. The Borough contends that Sigma Alpha Mu enjoyed the Property by way of a special exception, for which the prior owner had applied before the Property was occupied by members of the fraternity. The Borough argues that "[w]hen the special exception was applied for, had the group of young men applying . . . not been a [Penn State] recognized fraternity, said exception would not have been granted." (Borough's Br. at 16.) The Borough maintains that the Board would not have allowed any group of men referring to themselves as a fraternity to obtain a special exception and live in the fraternity house without some Penn State affiliation above and beyond that of simply being students. Thus, the Borough asserts that the Property lost its special exception status when Sigma Alpha Mu lost its Penn State recognition.

Landowner acknowledges that the Borough granted a special exception to permit construction of the fraternity house on the Property. However, Landowner contends that the Borough's subsequent amendment of the definition of "Fraternity House" in the Zoning Ordinance imposed a new restriction in the definition that made use of the Property as a "Fraternity House" a nonconforming use, because the Property's use as a fraternity house was lawful before the change in definition. Landowner argues that as long as Sigma Alpha Mu's use of the Property is consistent with the use that was legally established in 1989, it cannot be limited or restricted by an after-amended zoning provision. Landowner asserts that because the Zoning

---

[3] Penn State filed an amicus curiae brief in support of the Borough.

Ordinance did not require Penn State recognition until 2010, there is no basis for the Borough's argument that a special exception would not have been granted in 1989 if the fraternity had not been recognized by Penn State. Landowner notes that the 1989 special exception approval made no mention of Penn State recognition. It also alleges that "members of a 'fraternity' participate in and live within a house as 'brothers,' and there is nothing in the record to suggest that recognition by the University was an integral aspect of the relationship." (Landowner's Br. at 15.)

The Board found that the fraternity house on the Property was constructed after the Board granted a special exception in 1989. (F.F. No. 6.) The record confirms that the Board granted a special exception in 1989 for construction of a fraternity house on the Property. *See* R.R. at 94a-109a. At that time, the Zoning Ordinance permitted, by special exception, the construction of a fraternity house on land already owned by a fraternity organization. *See* R.R. at 96a-97a.

Just because the Board granted a special exception to permit construction of a fraternity house on the Property does not mean that the Property was not entitled to nonconforming use status after the definition of "Fraternity House" in the Zoning Ordinance was amended in 2010. In an equivalent situation encountered in *425 Property Association of Alpha Chi Rho, Inc. v. State College Borough Zoning Hearing Board* (Pa. Cmwlth., Nos. 1634 C.D. 2018, 1659 C.D. 2018, filed December 12, 2019), we concluded that a landowner's use of a property as a fraternity house prior to the Borough amending the definition of "Fraternity House" in the Zoning Ordinance in 2010 entitled the property to nonconforming use status. Unlike *425 Property Association*, here, the construction of the fraternity house on the Property was permitted by special exception. However, the fact that the construction of the fraternity house on the Property was initially permitted by

10

special exception does not change the analysis employed in that case.[4]  Therefore, for the reasons set forth in *425 Property Association*, we conclude that the use of the Property as a fraternity house prior to the adoption of the more restrictive definitions for "Fraternity House" in 2010 entitles the Property to lawful nonconforming use status, which precludes the Borough from compelling Landowner to comply with the more restrictive 2010 definition.

The remaining issues and arguments are identical to those set forth in *425 Property Association*.  Accordingly, for the reasons articulated in *425 Property Association*, we affirm the order of the trial court.


_____
PATRICIA A. McCULLOUGH, Judge



Judge Cohn Jubelirer did not participate in this decision.

---

[4] To the extent the Borough argues that the 1989 special exception would not have been granted if the original fraternity that applied for the special exception had not been a Penn State recognized fraternity, such allegation lacks any support in the record.  The Borough also does not attempt to argue that Sigma Alpha Mu has ever not satisfied the pre-2010 "Fraternity House" definition, which only required Penn State "affiliation" instead of "recognition."

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

329 Prospect Avenue   :
Corporation     :
         :  No.  1635 C.D. 2018
    v.    :
         :
State College Borough  :
Zoning Hearing Board  :
         :
    v.    :
         :
State College Borough,  :
     Appellant  :

## ***ORDER***

   AND NOW, this 12th day of December, 2019, the November 19, 2018 order of the Centre County Court of Common Pleas is affirmed.

          _____
          PATRICIA A. McCULLOUGH, Judge