**EQUILIBRIUM EQUITIES, INC., Appellant,**

v.

**BOARD OF SUPERVISORS OF MIDDLESEX TOWNSHIP, CUMBERLAND COUNTY.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1997.
Decided June 10, 1997.
Reargument Denied July 30, 1997.

Charles E. Zaleski, Harrisburg, for appellant.

Keith O. Brenneman, Mechanicsburg, for appellee.

Before COLINS, President Judge,
KELLEY, J. (P.), and LORD, Senior Judge.

COLINS, President Judge.

Equilibrium Equities, Inc. (Equilibrium) appeals from an order of the Court of Common Pleas of Cumberland County (trial court) which affirmed a decision of the Middlesex Township Board of Supervisors (Board) denying Equilibrium's application for a preliminary land development plan in Middlesex Township (Township) because its proposed use is not permitted in the Township's Limited Industrial district (LI district).

On October 31, 1995, Equilibrium filed a preliminary land development application, together with a preliminary land development plan, a traffic impact study, a stormwater and drainage calculations report and an environmental impact assessments report to construct a facility on approximately 37 acres of land in the Township's LI district. The plan proposes the construction of two adjacent buildings—one 300,000 square feet and the other 201,000 square feet. The land abuts properties which are zoned Industrial General (IG district) to the north, LI (LI district) to the west and south and Residential Farm (RF district) to the east. The facility will "store goods, take orders on-line from retailers, mix, recase, label and price customers' goods, prepare goods to be transported, assemble modular pallets, and in some cases do transporting." (Board decision at 2.) The facility will have approximately 40 dock doors for trucks spanning the rear with 140–foot deep trailer storage and loading areas. There will be 130 parking spaces in front of the facility. The proposed facility will generate between 600 and 2100 trips daily, 25% of which will be comprised of truck traffic. An estimated 100 employees will work at the facility which will operate around the clock.

The Board denied the preliminary land development application finding that the proposed use constituted "trucking terminals, storage facilities and garages" as defined in Section 12.03(B) of the Middlesex Township Zoning Ordinance (Ordinance) which use is only permitted in the IG district. On appeal, the trial court agreed that the proposed use constituted a trucking terminal rather than a warehouse.

The issues in this case are (1) whether Equilibrium's proposed use constitutes a truck terminal or a warehouse, (2) whether the reasons cited by the Board for denial of the land development plan are legally deficient, (3) whether the Board failed to interpret the terms of the ordinance in a manner favorable to the landowner, and (4) whether the proposed use comports with the LI district requirements.

■ Where, as here, the trial court has not taken any additional evidence, this court's review is limited to determining whether the zoning hearing board or board of supervisors committed a manifest abuse of discretion or error of law. *South Whitford Associates, Inc. v. Zoning Hearing Board of West Whiteland Township,* 157 Pa.Cmwlth. 387, 630 A.2d 903 (1993), *petition for allowance of appeal denied,* 538 Pa. 652, 647 A.2d 905 (1994).

■ Under the Ordinance, permitted uses in the LI district include "[w]arehousing, and wholesaling establishments and storage yards, but not including junk yards." Section 11.03B. Permitted uses in the IG district include "[t]rucking terminals, storage facilities and garages." Section 12.03B. The terms warehouse, storage and trucking terminal are not defined in the Ordinance. As such, in accordance with Section 2.01 of the Ordinance, those terms "have the meanings given in Webster's Unabridged Dictionary and shall be interpreted so as to give this ordinance its most reasonable application."

The terms warehouse, storage and terminal are defined in Webster's Third New International Dictionary (Unabridged) (1993) as follows:

**warehouse** ... **1.** a structure or room for the storage of merchandise or commodities; **a:** a wholesale establishment of the service type in which large inventories are carried **b:** a wholesale establishment oper-

ated by a chain store organization **c:** a place for the storing of surplus or reserve stocks of merchandise by a retail store **d:** a public institution for the storing of goods for others.

**storage** ... **2a:** the act of storing or state of being stored ... *specif:* the safekeeping of goods in a warehouse or other depository (place goods in ... ) ... **c:** the holding and housing of goods from the time they are produced until their sale.

**terminal** ... **6a:** either end of a carrier line (as a railroad, trucking or shipping line, or airline) with classifying yards, docks and lighterage facilities, management offices, storage sheds, and freight and passenger stations **b:** a freight or passenger station that is central to a considerable area or serves as a junction at any point with other lines.

Equilibrium maintains that in accordance with a reasonable application of the above definitions, their proposed structure constitutes a warehouse as it proposes to store goods at the facility for varying lengths of time. We agree.

■■■■ A use permitted under the Ordinance must be afforded its broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land. *JALC Real Estate Corp. v. Zoning Hearing Board of Lower Salford Township*, 104 Pa.Cmwlth. 605, 522 A.2d 710 (1987). The use proposed in this case is that of a warehouse. The total size of the proposed facility, approximately 500,000 square feet, is indicative of an intent to store goods. The Board maintains that the use centers on the distribution, handling & processing of goods rather than warehousing. All warehoused goods, however, are necessarily handled, processed and ultimately distributed. Additionally, although trucks may be used to transport the goods to and from the proposed facility, this characterization does not transform the proposed use into a trucking terminal. In fact, only twenty-five percent of all traffic will be attributable to trucks. If this use were indeed a trucking terminal, such a percentage would be significantly greater.

Although *D.C. Guelich Explosives Co. v. Zoning Hearing Board of Mifflin Township*, 105 Pa.Cmwlth. 232, 523 A.2d 1208 (1987), is procedurally different from the present case, it is supportive of Equilibrium's characterization that its proposed use is a warehouse. In *Guelich*, the applicant sought to construct a facility for the distribution of explosives on land located partially in a residential conservation district and partially in a residential agricultural district. Guelich applied for a variance or special exception and simultaneously challenged the validity of the zoning ordinance alleging that it was exclusionary because it banned its proposed use. The zoning hearing board denied the request for a variance or special exception and dismissed the challenge to the ordinance. The trial court, on appeal, determined that the ordinance was exclusionary, and thus unconstitutional, because the proposed use was not permitted in any of the districts. This Court reversed holding that the ordinance was not unconstitutional as Geulich's proposed use was permitted in the industrial district.

The original description given by Guelich in its application of the use requested "was for '[d]istribution of explosives.' " *Id.* at 1210. At the hearing, Guelich's witness testified that "the type of use requested ... was 'a storage and distribution facility.' " *Id.* This Court held that the "proposed use is warehousing and storage...." *Id.* As warehousing and storage were permitted in the industrial district, we held that the ordinance was not exclusionary. Here, as in *Guelich*, the proposed use is as a warehouse. Although the goods housed may be ultimately distributed, this does not alter the facilities use as a warehouse.

The Board maintains that when considered as a whole, the Ordinance evidences an intent to exclude Equilibrium's proposed use in the LI district. Section 2.03 of the Ordinance contains the following definitions:

**General Industrial Use:** Manufacturing or storage uses which, because of their shipping, storage and other requirements, should not be located in close proximity to residential areas.

**Light Industrial Use:** Manufacturing or storage uses which are characterized by

uses of large sites, attractive buildings and inoffensive process, which can be compatible with neighboring residential uses.

The intended purposes for these types of industrial districts are set forth in Sections 11.01 and 12.01 of the Ordinance:

SECTION 11.01—INTENDED PURPOSE. The LI Light Industrial District is designed to permit and encourage appropriate sites to be used for limited industry. Such limited industries are characterized by uses of large sites, attractive buildings and inoffensive processes. Such districts are further intended to encourage the harmonious and appropriate physical development of the Township by providing gradual transitions between adjacent land uses. To these ends, the limited industrial district is intended to discourage and minimize air and water pollution, noise, glare, heat, vibration, fire and safety hazards and other detriments to the environment.

SECTION 12.01—INTENDED PURPOSE. The IG Industrial District is designed to permit and encourage industrial development that will be so located and designed so as to constitute harmonious and appropriate development; to identify and consolidate locations of industrially-related land uses which, because of their shipping, storage and other requirements, exert special demands on the Township; to provide for general industrial and manufacturing uses that are not offensive in terms of excessive dust, smoke, fumes, glare, noise or other nuisances beyond the normal processing, fabricating or assembling of products; and to contribute to the soundness of the economic base of the Township. These regulations are designed to stabilize and protect the essential characteristics of the district by excluding uses which would have a detrimental effect upon the orderly development and function of the district.

■ We agree with Equilibrium that contrary to the Board's assertion, its plan complies with the intended purpose of the LI district. Specifically, the 500,000–square-foot building will be located on a large, 37–acre tract and the layout places structures as far from the roadway as possible. Moreover, its intended use of the facility, as a warehouse, is an inoffensive process.

Therefore, we hold that the use proposed by *Equilibrium* constitutes a warehouse.[1] Accordingly, because such use is permitted in the LI district, the order of the trial court is reversed.

### ORDER

AND NOW, this 10th day of June, 1997, the order of the Court of Common Pleas, dated August 22, 1996, at No.96–1120 Civil Term, is reversed.

---

1. Because of our holding that Equilibrium's proposed use constitutes a warehouse, we need not address the remaining issues.