Evergreen Farms at Coolbaugh : 
Township c/o Lehigh Valley : 
Underground, LLC, : 
               Appellant : 
         : 
        v. : 
         : 
Zoning Hearing Board of Coolbaugh : 
Township and The Citizens for :   No. 124 C.D. 2024
Pennsylvania's Future :   Submitted: April 8, 2025

BEFORE:   HONORABLE ANNE E. COVEY, Judge
             HONORABLE MATTHEW S. WOLF, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: May 1, 2025

Evergreen Farms at Coolbaugh Township (Township) c/o Lehigh Valley Underground, LLC (Evergreen) appeals from the Monroe County Common Pleas Court's (trial court) January 11, 2024 order denying Evergreen's land use appeal. Evergreen presents one issue for this Court's review: whether its principal use of the proposed building is a *distribution center/truck terminal* or a *warehouse* as defined in the Township Zoning Ordinance (Zoning Ordinance).[1] After review, this Court affirms.

**Background**

In April 2022, Evergreen submitted an application to the Township's Zoning Hearing Board (ZHB) for a special exception (Application) pursuant to

---

[1] Coolbaugh Twp., Pa., Zoning Code, Ord. (2021).

Section 400-14 of the Zoning Ordinance[2] to construct a warehouse on the property located at 174 Memorial Boulevard (Pennsylvania (PA) Route 611) in the Township (Property).[3] Evergreen submitted a proposal for a 426,000-square-foot building with sole access from PA Route 423. The single access road from PA Route 423 will allow up to nine tractor-trailers to stack along it before they enter the parking area on the Property. The proposed use will have 248 parking spaces for employees and 98 parking spaces for semi-trailers. The building will have 96 attached loading docks. The facility will operate 24 hours per day, Monday through Friday, in 3 shifts. The maximum anticipated traffic volume would be 1,972 trips in a 24-hour period.

The ZHB held four public hearings on June 2, July 14, August 31, and September 27, 2022. The ZHB held one additional meeting on October 26, 2022, for the purpose of rendering a decision, where it voted to deny the Application. On October 27, 2022, the ZHB issued a written decision finding that because Evergreen had failed to show that the proposed use was a *warehouse* as defined in the Zoning Ordinance, it was not a permitted use in the Township's C-3 Commercial Village District (C-3 District) by special exception.

The ZHB concluded:

> [Evergreen] had both the duty to present evidence that the big building it is proposing is in fact a "warehouse" as defined by the Zoning Ordinance, and the burden of persuasion. Pursuant to the Zoning Ordinance, warehouse is defined as, "[a] building or group of buildings primarily used for the indoor storage, transfer[,] and distribution of products and materials, but not including retail sales or a truck terminal." [Evergreen] presented absolutely no

---

[2] Ordinance § 400-14 (2021) (relating to district regulations - warehouses are permitted in the Township's C-3 Commercial Village District by special exception). *See* Reproduced Record at 1055a-1058a.

[3] Lynch Corporation owns the Property and Evergreen is the equitable owner of the Property.

evidence to prove this large building was in fact a "warehouse[.]" This omission is particularly curious because [Evergreen] was aware that certain objectors believed the large building would be used as a "distribution center/truck terminal[.]" And, in fact, much of the evidence which was presented would lead one to believe that the proposed use of the building was more akin to a "distribution center/truck terminal" than a "warehouse[.]" This would include trucks coming and going Monday through Friday 24 hours a day, 248 parking spots for 3 shifts of employees, 96 docks for "continuous truck loading[,]" and 98 spots to store trailers on site. The [ZHB] is not deciding that the proposed use is a "distribution center/truck terminal[.]" It is only deciding that [Evergreen] has failed to prove that the proposed use is a "warehouse[.]"

Original Record at 24-25 (footnote and internal record citation omitted).[4]

Evergreen appealed from the ZHB's decision to the trial court on November 22, 2022. The Citizens for Pennsylvania's Future (Intervenor) intervened. By April 5, 2023 order, the trial court reversed the ZHB's special exception denial and remanded the matter to the ZHB for further findings. The trial court found that the proposed use *included* a warehouse on the Property; however, it was not clear if the *actual use* was as a distribution center/truck terminal, or whether the warehouse was a secondary or incidental use thereto. The trial court observed that a warehouse is a permitted use in a C-3 District, but a distribution center/truck terminal is not. Furthermore, the trial court determined that the Zoning Ordinance specifically excludes retail sales or a truck terminal from the *warehouse* definition. The trial court instructed the ZHB to take additional testimony, if necessary, to determine whether the proposed use is also a truck terminal and to provide the ZHB's interpretation of the Zoning Ordinance concerning the definitions of *warehouse* and *distribution center/truck terminal*.

---

[4] Because the Original Record pages are not numbered, this Court references electronic pagination herein.

**Facts**

On remand, on May 31, 2023, the ZHB held a hearing to take additional testimony. Evergreen presented testimony from a prior witness, Mark A. Bahnick, P.E. (Bahnick), the project engineer, and Kimberly Jacobson (Jacobson), a commercial real estate broker. Intervenor called one witness, Daisy Wang, Ph.D. (Dr. Wang), an associate professor of business at East Stroudsburg University. James Miller, a Township resident, also testified. The ZHB met on August 14, 2023, to render a decision. The ZHB determined that there is no conflict in the Zoning Ordinance between the definitions for *warehouse* and *distribution center/truck terminal*, the latter of which includes a warehouse as an incidental use. The ZHB voted that the Property's proposed use would be a distribution center/truck terminal, which is not a permitted use in the C-3 District. On August 31, 2023, the ZHB issued its written decision. Evergreen appealed to the trial court. On January 11, 2024, the trial court denied Evergreen's appeal. Evergreen appealed to this Court.[5]

**Discussion**

Initially,

> [d]ue to [its] expertise and experience, a zoning hearing
> board's interpretation of its own zoning ordinance is
> entitled to great weight and deference. The general
> principle that zoning ordinances must be construed so as

---

[5] "When [the trial court] takes no additional evidence, [this Court] must limit [its] review to whether the ZHB 'committed an abuse of discretion or an error of law.'" *Plum Borough v. Zoning Hearing Bd. of Borough of Plum*, 310 A.3d 815, 823 (Pa. Cmwlth. 2024) (quoting *Harrisburg Gardens, Inc. v. Susquehanna Twp. Zoning Hearing Bd.*, 981 A.2d 405, 410 (Pa. Cmwlth. 2009)). "[This Court] appl[ies] this deferential standard of review because [it] do[es] not sit as 'a super [zoning hearing board]' and thus '[t]he necessity must be clear before there is justification for judicial interference with the municipality's exercise of its zoning power.'" *Id.* (quoting *Robert Louis Corp. v. Bd. of Adjustment of Radnor Twp.*, 274 A.2d 551, 555 (Pa. Cmwlth. 1971)).

> to give landowners the broadest possible use of their property gives way where the ordinance, read rationally and as a whole, clearly signals that a more restrictive meaning was intended.

*Cogan Props., LLC v. E. Union Twp. Zoning Hearing Bd.*, 318 A.3d 981, 986 (Pa. Cmwlth. 2024) (quoting *Hamilton Hills Grp., LLC v. Hamilton Twp. Zoning Hearing Bd.*, 4 A.3d 788, 793 (Pa. Cmwlth. 2010) (internal quotation marks and citations omitted)).  Further,

> [g]enerally speaking, a special exception is not an exception to a zoning ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community.  The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met.

*Cogan Props., LLC*, 318 A.3d at 986 (quoting *Siya Real Est. LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1157 (Pa. Cmwlth. 2019) (internal citations, brackets, and quotation marks omitted)).

Evergreen argues that the ZHB's decision to deny the special exception for its proposed warehouse should be reversed because the ZHB relied upon criteria and standards not contained within the Zoning Ordinance to conclude that Evergreen's proposed use was a distribution center/truck terminal rather than a warehouse.  Evergreen further contends that the ZHB's arguments raised were expressly rejected by this Court in *Equilibrium Equities, Inc. v. Board of Supervisors of Middlesex Township, Cumberland County*, 696 A.2d 260 (Pa. Cmwlth. 1997).

The ZHB rejoins that there is no conflict between the definitions of warehouse and distribution center/truck terminal, the latter of which includes a warehouse as a use incidental to the principal distribution center/truck terminal use. The ZHB asserts that, based upon the evidence presented to the ZHB, the principal use of the Property will be a distribution center/truck terminal as defined in the Zoning Ordinance.  The ZHB further retorts that *Equilibrium Equities* does not

5

control the instant matter because the terms *truck terminal* and *warehouse* were not defined in the zoning ordinance therein and the definition of *terminal* used therein bears no resemblance to the definition of *distribution center/truck terminal* in the Zoning Ordinance. Intervenor maintains that the ZHB correctly found that the definitions of *warehouse* and *distribution center/truck terminal* unambiguously define two separate principal uses, notwithstanding that there is some overlap in those definitions. Intervenor further counters that allowing a warehouse as an incidental use to a distribution center/truck terminal, but not vice versa, does not render the Zoning Ordinance ambiguous.

In *Equilibrium Equities*, Equilibrium filed a preliminary land development application (application), together with, *inter alia*, a preliminary land development plan (plan). The plan proposed the construction of two adjacent buildings - one 300,000 square feet and the other 201,000 square feet. Equilibrium proposed that it would store goods; take orders on-line from retailers; mix, recase, label, and price customers' goods; prepare goods to be transported; assemble modular pallets; and in some cases transport goods from the facility. The facility would have approximately 40 dock doors for trucks spanning the rear with 140-foot deep trailer storage and loading areas. There would be 130 parking spaces in front of the facility. The proposed facility would generate between 600 and 2,100 trips daily, 25% of which would be truck traffic. An estimated 100 employees would work at the facility, which would operate around the clock.

The board of supervisors denied Equilibrium's application, having found that the proposed use constituted *trucking terminals*, *storage facilities*, and *garage* as defined in Section 12.03(B) of the Middlesex Township zoning ordinance, which use was only permitted in the Industrial General zoning district. On appeal, the trial court agreed that the proposed use constituted a trucking terminal rather than a warehouse. Equilibrium appealed to this Court, which reversed the trial court's

6

order, concluding that based on Webster's Third New International Dictionary's (Unabridged) (1993) (Dictionary) definitions of *warehouse*, *storage*, and *terminal*, Equilibrium's proposed use was a warehouse.

> The Dictionary definitions this Court applied therein were:
>
> **warehouse** . . . **1.** a structure or room for the storage of merchandise or commodities; **a:** a wholesale establishment of the service type in which large inventories are carried **b:** a wholesale establishment operated by a chain store organization **c:** a place for the storing of surplus or reserve stocks of merchandise by a retail store **d:** a public institution for the storing of goods for others.
>
> **storage** . . . **2a:** the act of storing or state of being stored . . . *specif:* the safekeeping of goods in a warehouse or other depository (place goods in . . . ) . . . **c:** the holding and housing of goods from the time they are produced until their sale.
>
> **terminal** . . . **6a:** <u>either end of a carrier line</u> (as a railroad, trucking or shipping line, or airline) with classifying yards, docks and lighterage facilities, management offices, storage sheds, and freight and passenger stations **b:** <u>a freight or passenger station that is central</u> to a considerable area or serves as a junction at any point with other lines.

*Equilibrium Equities*, 696 A.2d at 261-62 (underline emphasis added) (quoting Dictionary).

Here, Section 400-10 of the Zoning Ordinance defines a *warehouse* as "[a] building or group of buildings primarily used for the indoor storage, transfer[,] and distribution of products and materials, but not including retail sales or a truck terminal." Reproduced Record (R.R.) at 1051a. Section 400-10 of the Zoning Ordinance defines a *distribution center/truck terminal* as:

> An establishment engaged in the receipt, storage[,] and distribution of goods, products, cargo[,] and materials, including transshipment by boat, rail, air[,] or motor vehicle. Breakdown of large orders from a single source

7

into smaller orders and consolidation into several orders into one large one for distribution to several recipients and vice versa are often part of the operation. The operation may include the storage or parking of trucks awaiting cargo as well as facilities for servicing trucks. Storage facilities, such as warehouses, incidental to the principal use may also be part of the operation. Retail sales, manufacturing[,] and assembly, or product processing, are not considered part of a distribution center/truck terminal.

R.R. at 1014a. Because the Zoning Ordinance includes the definitions for *warehouse* and *distribution center/truck terminal*, and those definitions are different than the Dictionary definitions this Court relied upon in *Equilibrium Equities*, that case is inapposite.

Moreover, concerning the definition of *distribution center/truck terminal*, Dr. Wang, an expert in supply management, credibly testified that, in today's world, a truck terminal is considered a type of distribution center, and it is appropriate to use a single definition for both terms.[6] Specifically, Dr. Wang described:

Q. And so would you agree with me that [] the [Zoning Ordinance] . . . identified a distribution center as a truck terminal?

A. No.

Q. You don't agree with that?

A. No.

Q. Even though they're in the same --

A. Slash. It's a slash, it's not a quotation.

Q. Right, but look at the definition. Are there two different definitions or are there one?

A. There's one.

_____

[6] *See* R.R. at 780a (ZHB Dec. at 9).

8

Q. What do you think that one definition applies to?

A. Distribution center.

Q. You think that definition applies to a distribution center?

A. Yes.

Q. It has nothing to do with a truck terminal even though it's titled truck terminal?

A. **Nowadays [a] truck terminal is considered a type of distribution center**.

Q. A truck terminal is considered a type of distribution center?

A. Yes.

R.R. at 887a-888a (emphasis added).

Concerning whether the proposed use more closely resembled a warehouse or a distribution center, Dr. Wang testified that, based upon the Zoning Ordinance's definitions, the proposed facility was more likely a distribution center/truck terminal than a warehouse. Dr. Wang related:

Q. . . . . What was your impression of the project based off of your review of the plans?

A. Again, we didn't have enough information, but based on my review[,] **it's more likely to be a distribution center than a warehouse**.

Q. Why do you say that?

A. First of all, because it's, you know, **it has almost 100 loading docks** and I cannot figure out what business is nearby, because we talk about warehouses should be close to the businesses. I don't -- I couldn't come up with some business nearby or that many businesses nearby would use this kind of size of the warehouse if it's not a distribution center.

9

Q. Were there any other factors that added -- that led to that conclusion?

A. The fact that **it's close to highway 80 and the size of the** -- and then they mention **270 trucks every 24 hours**.

Q. What information would you need to agree that this is a warehouse?

A. Like I mentioned, if we could know at least what kind of businesses would be there, what product they are going to put in there, and what facility will be in there, so then we'll have a better understanding [of] whether or not it's a warehouse or distribution center.

Q. The third[-]party logistics companies such as those mentioned in [] Jacobs[o]n's testimony,[7] in your understanding[,] do those uses [] more closely [relate] to the [T]ownship's definition of a warehouse or the definition of a distribution center?

A. Distribution center.

Q. And do you agree with [] Bahnick's testimony that it is impossible to operate the proposed structure as a truck terminal or distribution center?[8]

A. No, because it's so big, so instead of doing the cross docking, they could do [it] this way cross docking [sic][.]

R.R. at 877a-878a (emphasis added). The ZHB found Dr. Wang's testimony compelling and relied on it over the testimony of Evergreen's two witnesses, who virtually agreed with Dr. Wang, except for concluding that the facility is a warehouse

---

[7] Jacobson testified: "If this is a warehouse that is operated by what we call a third[-]party logistics provider, the customer of the third[-]party logistics provider technically owns the product until it is shipped and sold to a customer and it's that changing of ownership I would deem as transfer." R.R. at 833a.

[8] Bahnick declared: "A truck terminal is either at a minimum double loaded and in some cases there are truck loading docks on all four sides of the building. A truck terminal building is never a single loaded building." R.R. at 805a.

10

based upon the shape of the building (long and wide as opposed to long and narrow), and the access of loading docks on both sides.

The trial court opined:

The ZHB found Dr. Wang credible in her testimony that the testimony of [Evergreen's] own witnesses was more indicative of a warehouse that is incidental to the primary use as a distribution center/truck terminal. [The trial court] find[s] the testimony supported the finding of the ZHB and see[s] no reason to disturb the ZHB's fact[-]finding or credibility determinations. The sheer volume of daily trips, the number of tractor-trailers coming and going, the number of employees working [3] [] shifts[] 24 hours per day, and the size of the building support[] the findings of Dr. Wang and the ZHB that this is a distribution center/truck terminal, and not just a warehouse.

As the ZHB found that the use is not solely as a warehouse, but rather a warehouse building to be used as a distribution center/truck terminal, and that there was no conflict in the definitions of the [Z]oning [O]rdinance, and [the trial court] see[s] no reason to disturb those findings, the use cannot be permitted. The [P]roperty is located in a [C-3 District]. A distribution center/truck terminal is not an allowed use in the [C-3 District]. As [Evergreen] has not proposed an allowable use, the ZHB was correct in denying the special exception.

Trial Ct. Op. at 14. This Court discerns no error in the trial court's reasoning. Accordingly, this Court holds that the ZHB did not abuse its discretion or commit an error of law by denying the Application.

## Conclusion

For all of the above reasons, the trial court's order affirming the ZHB's decision is affirmed.

_____
ANNE E. COVEY, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Evergreen Farms at Coolbaugh : \
Township c/o Lehigh Valley : \
Underground, LLC, : \
          Appellant : \
           : \
          v. : \
           : \
Zoning Hearing Board of Coolbaugh : \
Township and The Citizens for :   No. 124 C.D. 2024 \
Pennsylvania's Future : 

## O R D E R

AND NOW, this 1st day of May, 2025, the Monroe County Common Pleas Court's January 11, 2024 order is affirmed.

_____ \
ANNE E. COVEY, Judge