# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Bethlehem, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | No. 1013 C.D. 2024 |
| | : | |
| Zoning Hearing Board of City of | : | |
| Bethlehem, BAHX LLC, Paul Fondl, | : | |
| Teresa Kloiber, and Mary Jo Makoul | : | |
| | | |
| City of Bethlehem, | : | |
| | : | |
| v. | : | No. 1066 C.D. 2024 |
| | : | Submitted: June 3, 2025 |
| Zoning Hearing Board of City of | : | |
| Bethlehem, BAHX LLC, Paul Fondl, | : | |
| Teresa Kloiber, and Mary Jo Makoul | : | |
| | : | |
| Appeal of: Teresa Kloiber, Paul Fondl, | : | |
| and Mary Jo Makoul | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge (P.)
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: July 7, 2025

In these consolidated appeals, the City of Bethlehem (Bethlehem) and Teresa Kloiber, Paul Fondl, and Mary Jo Makoul (together, Objectors) appeal from the July 26, 2024 Order of the Court of Common Pleas of Lehigh County (trial court), which denied Bethlehem's land use appeal and affirmed the decision of the Zoning Hearing Board of the City of Bethlehem (ZHB) granting the interpretive relief sought by BAHX LLC (BAHX) with regard to its proposed construction of a residential

apartment complex on a parcel of land that straddles the boundary between Bethlehem and the City of Allentown (Allentown). For the reasons that follow, we reverse the trial court's Order.

## I. BACKGROUND

BAHX is the equitable owner of four parcels of land with a consolidated aggregate size of 8.85 acres (Property). The Property is situated along Hanover Avenue, West Broad Street, North Wahneta Street, Florence Avenue, Bascom Street, and Grandview Boulevard and was previously used as a car dealership. The Property is located partially in Bethlehem and partially in Allentown. The portion of the Property in Bethlehem is in the "limited commercial" zoning district. The portion of the Property in Allentown is in the "B-3 highway business" zoning district.

BAHX proposed to develop the Property with 4 multifamily dwelling buildings comprised of 317 apartment units. The Property is identified on BAHX's zoning application and Sketch Plans as "Hanover Apartments" with a primary address of "2300 Hanover Avenue." (Bethlehem's Reproduced Record (R.R.) at 8a, 10a, 60a; Objectors' R.R. at 4a-5a.) The building most closely bordering and parallel to West Broad Street in Bethlehem is identified as "Building #4" (Building 4) on the Sketch Plans and is separated from the other three buildings by parking areas. (Bethlehem's R.R. at 62a.) Building 4 is the subject of this appeal.

As shown on the Sketch Plans, West Broad Street is located entirely in Bethlehem, which permits a multifamily dwelling in the limited commercial district. The main entrance to the Property is on North Wahneta Street, which is located entirely in Allentown. Allentown does **not** permit a multifamily dwelling in the B-3 highway business district. The municipal boundary line between Bethlehem and Allentown cuts through three of the four buildings on the Property, including Building 4. (*See id.*)

2

On December 28, 2022, BAHX filed an application with the ZHB, seeking, *inter alia*, a favorable interpretation that the requirement of a street-level commercial use for a multifamily residential dwelling in a limited commercial district (Commercial Use Provision) in Bethlehem's Zoning Ordinance (Zoning Ordinance)[1] does **not** apply to Building 4.[2] The Commercial Use Provision provides, with respect to multifamily dwellings in the limited commercial district, that "[s]uch housing shall be located in the same building as a **principal commercial use that is on the front street level. This requirement for a street[-]level commercial use shall not apply to buildings fronting on local streets**." (Zoning Ordinance at 34 (emphasis added).)[3]

Before the ZHB, BAHX asserted that Building 4 "fronts" on North Wahneta Street and that North Wahneta Street is a "local street" under the Zoning Ordinance, so the Commercial Use Provision's requirement of a street-level commercial use is inapplicable. In the Sketch Plans, the first floor of Building 4 is designated as a parking garage for the apartment residents. (Bethlehem's R.R. at 62a.)[4]

---

[1] BETHLEHEM, PA., ZONING ORDINANCE (2021).

[2] In its December 28, 2022 application, BAHX also sought a dimensional variance from the Zoning Ordinance's 180-foot building length requirement, as well as a use variance "to allow parking on [the] street level of [the] building along West Broad Street" in lieu of the required commercial space. (Bethlehem's R.R. at 6a.) BAHX, however, later abandoned its request for a use variance. In its September 29, 2023 decision, the ZHB denied BAHX's request for a dimensional variance, and BAHX does not challenge that ruling on appeal.

[3] This provision does not appear in the main text of the Zoning Ordinance. Rather, it appears in footnote 1 beneath a chart, located in Article 1305, showing that a multifamily residential dwelling is a permitted use by right in a limited commercial zoning district. (*See* Zoning Ordinance at 34.)

[4] In its application, BAHX stated with respect to Building 4:

> [A] significant portion of the parking for the units within the proposed building along West Broad Street is located on the first floor [of] the building to provide resident parking proximate to the building, which is otherwise restricted by the existing easements running through the [P]roperty. Locating parking on the first

**(Footnote continued on next page…)**

On February 22, 2023, Bethlehem's Zoning Officer issued a recommendation that BAHX's request for favorable interpretive relief be denied. Specifically, the Zoning Officer determined:

> While multi[]family dwellings are permitted in the [limited commercial] district, "[s]uch housing shall be located in the same building as a principal commercial use that is on the front street level. This requirement for a street level commercial use shall not apply to buildings fronting on local streets." **According to [Bethlehem's] Classified Street[s] Map, West Broad Street, including the section running along the Property, is a principal arterial street.** Additionally, . . . in the [Zoning Ordinance's] definition of "meal center[,"] reference is made to identifying collector streets, minor arterial streets, and principal arterial[] streets on [Bethlehem's] Classified Street[s] Map. **Broad Street is mapped on the Classified Street[s] Map in the color orange, denoting a principal arterial street.** This is the same color mapped for Route 412 on the Classified Street[s] Map, and the Zoning Ordinance expressly identifies Route 412 as an arterial street.
>
> The Zoning Ordinance defines "street" as "[a]ny road, highway, avenue, street, parkway, lane or other way, public or private, set aside and commonly used to serve 3 or more lots primarily for vehicular traffic purposes. An alley shall not be deemed a street." [Bethlehem's] Subdivision and . . . Development Ordinance [(SDO)] defines "local street" as "[a] street whose main purpose is to provide access to individual lots." "Arterial or collector street" is defined in the [SDO] as "[a] street which acts as a major carrier of traffic between distant points in [Bethlehem] and which may provide access to individual lots."
>
> Based upon the above, **it is without doubt that West Broad Street, including the section thereof on which the proposed [B]uilding [4] would front, is not a local street and thus the "local street" [exception] to . . . [the Commercial Use Provision] is inapplicable. In other words, [the Commercial Use Provision] applies to the proposed building on the Property along West Broad Street.**

---

floor of the building also minimizes impervious paving and increase[s] green space throughout the site.

(Bethlehem's R.R. at 7a.)

4

(*Id.* at 41a (internal citations omitted) (emphasis added).)[5]

The ZHB held public hearings on May 10, 2023, June 14, 2023, and August 16, 2023. Objectors, each of whom lives in proximity to the Property, appeared and testified in opposition to BAHX's application.[6]

On September 29, 2023, the ZHB issued a Decision granting BAHX's request for a favorable interpretation of the Commercial Use Provision.[7] The key issues before the ZHB were: (1) whether Building 4 "fronts" on West Broad Street (which lies in Bethlehem) or North Wahneta Street (which lies in Allentown), and (2) if Building 4 fronts on North Wahneta Street, whether North Wahneta Street is a "local street" or an "arterial street" under the Zoning Ordinance. (ZHB Decision, 9/29/23, at 10-11.)[8]

With regard to the first issue, the ZHB applied the definitions of "corner lot" and "front lot line" in the Zoning Ordinance[9] and concluded as follows:

---

[5] The Bethlehem Planning Commission supported the recommendation of both the Zoning Officer and Bethlehem's Director of Planning and Zoning that BAHX would need a variance to allow parking on the street level of Building 4 in lieu of the required commercial space.

[6] Ms. Kloiber resides at 345 Grandview Boulevard, which is located diagonally across from the Property. Mr. Fondl resides at 413 Grandview Boulevard, which abuts the Property. Ms. Makoul resides at 449 Grandview Boulevard, which also abuts the Property. (ZHB Decision, 9/29/23, at 9.) At the ZHB hearing, "another [Bethlehem] resident, William Scheirer of 1890 Eaton Avenue[,] testified that [BAHX's] proposed interpretation [of the Zoning Ordinance] is flawed given the express and plain language of the ordinance mandat[ing] that a commercial use must occupy the street level of [Building 4]." (*Id.* at 10.)

[7] The members of the ZHB voted 5-0 in favor of BAHX on this issue. (ZHB Decision, 9/29/23, at 23.)

[8] At the ZHB hearing, BAHX's counsel stipulated that West Broad Street is an arterial street and that North Wahneta Street lies in Allentown and does not appear on Bethlehem's Classified Streets Map. (Bethlehem's R.R. at 20a-22a.)

[9] "Corner lot" is defined as

> [a] lot whose lot lines form an interior angle of less than 135 degrees at the
> intersection of 2 street lines. A lot abutting on a curved street shall be deemed a

**(Footnote continued on next page…)**

**The [ZHB] finds as a matter of fact that th[e] Property is a
"[c]orner [l]ot"** as the relevant lot lines form an interior angle of less
than 135 degrees at the intersection of the two relevant streets. Given
this finding, [**BAHX], under Zoning Ordinance § 1302.67(g)[,] . . .
was permitted to designate North Wahneta Street as the "front lot
line**[**."**] It is noteworthy that North Wahneta Street also contains the
main entrance and West Broad Street is fenced off from the site. The
rear of . . . Building [4] faces West Broad Street.

(*Id.* at 13.)

In so concluding, the ZHB rejected Bethlehem's and Objectors' claim that

BAHX was not permitted to designate North Wahneta Street as the front lot line

because it is located in Allentown, which is beyond the ZHB's authority to control.

Citing *Board of Commissioners of Cheltenham Township v. Hansen-Lloyd, L.P.*, 166

A.3d 496 (Pa. Cmwlth. 2017), *affirmed*, 211 A.3d 845 (Pa. 2019), the ZHB stated

that in determining whether a proposed land development satisfies Bethlehem's

zoning requirements, the ZHB may "consider[] the existence of site characteristics,"

regardless of whether they fall inside or outside Bethlehem's borders. (ZHB

Decision, 9/29/23, at 16.) In other words, "consideration of the presence or existence

of a street is not the [ZHB] exerting control over land located in another municipality

or applying extra[-]jurisdictional [control over] open space." (*Id.* at 15-16.) The

ZHB explained:

> Most critically, [neither the Commercial Use Provision], nor any
> of the above considered Zoning Ordinance sections, restrict[s] our
> consideration to the streets in . . . Bethlehem. **The definitions at issue**

---

corner lot if the tangents to the curve at the points of intersection of the side lot lines
with the street lines intersect at an interior angle of less than 135 degrees.

(Zoning Ordinance § 1302.67(b).) "Front lot line" is defined as "[t]he street line at the front of a
lot. **In the case of a corner lot, the owner may designate either street line as the front lot
line.**" (*Id.* § 1302.67(g) (emphasis added)).

6

**do not mandate the [ZHB] to ignore the existence of streets or lot characteristics over the municipal line.**

> The Property is a corner lot and [**BAHX**] **was within its rights to designate North Wahneta Street as the front yard, which, in turn makes it the street on which the building fronts.**

(*Id.* at 16 (footnote omitted) (emphasis added).)

Turning to the second issue, the ZHB observed that "under [the Commercial Use Provision], . . . [BAHX] is only excused from the obligation to include a first[-]floor commercial use if North Wahneta Street is determined to be a 'local street[.']" (*Id.*) While the Zoning Ordinance does not define "local street," it expressly incorporates the definitions in Bethlehem's SDO.[10] The SDO defines "local street" as "[a] street whose main purpose is to provide access to individual lots." (SDO § 1343.02(g)(2)(A).) The SDO defines "arterial street" as "[a] street which acts as a major carrier of traffic between distant points in [Bethlehem] and which may provide access to individual lots." (*Id.* § 1343.02(g)(2)(B).) Applying these definitions, the ZHB concluded:

> [Bethlehem] again[] argues that North Wahneta Street cannot be considered because it is not located in . . . Bethlehem. For the same reasons cited above, the [ZHB] rejects such argument. **Contrary to [Bethlehem's] argument . . . , whether the street is approved by the . . . [Bethlehem] Department of Public Works (referenced in the [Zoning Ordinance] definition of "[s]treet [c]urb [l]ine") makes it no less a street.**[11] **The question is whether it meets the definition of a "[l]ocal [s]treet" quoted above.**

---

[10] The Zoning Ordinance states that "[i]f a word is not defined in this Ordinance, but is defined in the [SDO], . . . then the [SDO] definition shall also apply to this Ordinance." (Zoning Ordinance § 1302.01(a)(8).)

[11] In this sentence, the ZHB wrote "the City of Allentown Department of Public Works" and "the [SDO] definition of [s]treet [c]urb [l]ine." However, these were apparently typographical errors, as the definition of "street curb line" appears in the **Zoning Ordinance**, not the SDO, and that definition references **Bethlehem's** Department of Public Works. (*See* Zoning Ordinance § 1302.126(a); *see also* Bethlehem's R.R. at 19a (the Zoning Officer testified, in reviewing the **(Footnote continued on next page…)**

7

[Bethlehem] emphasizes the designations of various streets on [its] Classified Streets Map. The issue that arises is that, being located in . . . Allentown, North Wahneta Street was not provided *any designation* on the Classified Streets Map. While [Bethlehem] argues that the [ZHB] must then act as if North Wahneta Street does not exist, **the [ZHB's] mandate is to apply the definition of "[l]ocal [s]treet" from [SDO] § 1343.02(g)(2)[(A)], which does not reference or incorporate the Classified Streets Map.**

**The [ZHB] finds, as a matter of fact, given the evidence submitted, the information provided on the various plans and materials as well as given [the ZHB members'] personal knowledge, that North Wahneta Street is a street whose "main purpose is to provide access to individual lots" and is, accordingly, a "[l]ocal [s]treet[."] Accordingly, the first-floor commercial use requirement of [the Commercial Use Provision] is inapplicable to Building 4.**

(ZHB Decision, 9/29/23, at 17-18 (italics in original; bold added).) Therefore, the ZHB granted BAHX's "request for a favorable interpretation that the requirement for a principal commercial use on the street level under [the Commercial Use Provision] **does not apply** to the Property." (*Id.* at 22 (emphasis added).)

Bethlehem appealed to the trial court. On July 26, 2024, after briefing and oral argument, the trial court entered an Order denying Bethlehem's appeal and affirming the ZHB's decision.[12] The trial court concluded as follows:

Based on the ample evidence of record, the [ZHB] did not abuse its discretion in finding that the Property is a "corner lot" as defined by the . . . Zoning Ordinance at Section 1302.67(b). As a corner lot, BAHX[] . . . could designate N[orth] Wahneta Street as the "front lot line" under Section 1302.67(g) of the [Zoning] Ordinance. Thus, **the [ZHB] did not err or abuse its discretion when it found that Building . . . 4 fronts [on] N[orth] Wahneta Street, and not West Broad Street.** Furthermore, the testimony and evidence of record supports the [ZHB's] conclusion that N[orth] Wahneta Street is local in

definition of "street curb line," that Bethlehem's Department of Public Works cannot approve street curb lines in Allentown).)

[12] Objectors were granted intervenor status in the proceedings before the trial court.

nature based on its purpose, notwithstanding the fact that it is outside of the Bethlehem city limits. Accordingly, **the [ZHB's] interpretation of its [Zoning O]rdinance rendering the first-floor commercial use requirement under [the Commercial Use Provision] inapplicable to Building 4 must be affirmed.**

(Trial Ct. Order, 7/26/24, at 1 n.1 (internal citation omitted) (emphasis added).)

Both Bethlehem and Objectors appealed to this Court. After Bethlehem and Objectors filed their Pa.R.A.P. 1925(b) Statements, the trial court issued an "Amended Pa.R.A.P. 1925(a) Statement," wherein it "incorporate[d] by reference its July 26, 2024 Order, as well as the reasons set forth in the September 29, 2023 Decision of the [ZHB], which th[e trial c]ourt found persuasive, comprehensive, within the purview of the [ZHB's] discretion[] and in accordance with the applicable law amply cited by the [ZHB]." (Am. 1925(a) Stmt., 10/18/24, at 2.)

## II. ANALYSIS

### A. Relevant Case Law

We begin by reviewing legal precedent addressing whether, and to what extent, a zoning hearing board may consider land beyond its municipal borders in determining whether a proposed development satisfies the requirements of its zoning ordinance, where the property at issue spans two or more municipalities.

In *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788 (Pa. Cmwlth. 2010), a developer proposed to build 325 townhomes on an 89.37-acre parcel that spanned 3 municipalities, including Hamilton Township. Under Hamilton Township's zoning ordinance, the developer was required to provide 300 square feet of open space per unit. In its application for a special exception, the developer asserted that the open space requirement could be met by using land in the neighboring municipalities. The Hamilton Township zoning hearing board denied the developer's application because it did not establish that the

9

open space requirement could be met within Hamilton Township, excluding the land in the other two municipalities.

On appeal, this Court held that the zoning hearing board did not abuse its discretion by requiring the developer to satisfy the Hamilton Township zoning ordinance's open space requirement using only land located within the borders of Hamilton Township. We observed that the ordinance did not explicitly state that the zoning hearing board could consider land beyond the township's borders and, in fact, repeatedly referred only to land **within** Hamilton Township. We also considered the central goals of the ordinance, which were to prevent overcrowding, preserve the rural nature of the community, and avoid excessive development within Hamilton Township, and concluded that those goals could "only be accomplished if the density and open space requirements used to balance higher density developments are satisfied by land **within the borders of** [**Hamilton**] **Township**." *Id.* at 794 (emphasis added).

This Court then explained:

> In the context of zoning decisions, Section 501 of the Pennsylvania Municipalities Planning Code (MPC),[13] grants municipalities the authority to control development within their borders. *See* 53 P.S. § 10501 (making multiple references to the authority to control development "within the municipality"); *see also King v. Perkasie Borough Zoning Hearing B*[*d.*], . . . 552 A.2d 354, 355-56 ([Pa. Cmwlth.] 1989) (interpreting Section 501 of the MPC to forbid extraterritorial control by a municipality on the grounds that, under the MPC, a municipality's powers stop at its border). Pursuant to Section 619.1(d) of the MPC,[14] municipalities may exercise extraterritorial control when they enter into a specific written agreement with a neighboring municipality. 53 P.S. § 10619.1(d); *Baronoff v. Zoning B*[*d.*] *of Adjustment*, . . . 122 A.2d 65, 68 ([Pa.] 1956). **While the MPC does not state that municipalities are precluded from considering**

---

[13] Act of July 31, 1968, P.L. 805, *as amended*.

[14] Section 619.1 of the MPC was added by Section 65 of the Act of December 21, 1988, P.L. 1329.

10

> **extraterritorial matters when making zoning decisions, numerous sections of the MPC indicate that there is an underlying assumption that zoning decisions can be made based on factors within the municipality's jurisdiction.** *See, e.g.*, Section 605 of the MPC, 53 P.S. § 10605 (providing that provisions of a zoning ordinance may be classified so that different requirements apply to different districts "of the municipality"); Section 503(4.1) of the MPC, 53 P.S. § 10503(4.1) (granting municipalities the authority to impose certain requirements "uniformly throughout the municipality"). **The limited nature of municipal authority, and the MPC's underlying assumption that municipalities will confine their efforts to furthering the well-being of their own constituencies, indicate that, in general, zoning ordinances should be construed so as to permit consideration only of land located within the borders of the enacting body.**

*Id.* at 795 (emphasis added). Therefore, we held that "[b]ased on the plain language of the [o]rdinance in question, the limited nature of the zoning power, and the constitutional boundaries within which that power is exercised, . . . **a zoning hearing board may limit itself to the consideration of land located within the borders of the enacting municipality**." *Id.* at 790 (emphasis added). We reasoned that if the developer's application were granted, the neighboring municipalities would have the authority to control the open space that was intended to benefit Hamilton Township's residents. In effect, "the [b]oard would be forced to entrust the welfare of [Hamilton] Township" to the zoning boards of the other municipalities. *Id.* at 796.

In *Hansen-Lloyd*, a developer owned a 43-acre tract of land; 10 acres were located in Cheltenham Township, and the remaining acres were located in neighboring Springfield Township. Cheltenham Township's zoning hearing board granted the developer's application for a special exception to construct an age-restricted housing development on the property. On appeal, this Court held that the board did **not** err in allowing the developer to use land located in an adjoining municipality to comply with the setback requirement, rather than measuring the setback from the municipal boundary line. We observed that the applicable zoning ordinance did not require setbacks from the municipal boundary line, but from **the**

11

**property line**.  In considering this issue, we distinguished *Hamilton Hills* on its facts "because [*Hamilton Hills*] pertained to open space within a municipality, not setback provisions."  *Hansen-Lloyd*, 166 A.3d at 507.  Rather, in *Hansen-Lloyd*, the zoning hearing board "simply found that the municipal boundary line was not a property line for measuring setbacks.  In so concluding, **the [zoning hearing board] did not exert any control over land located in another municipality**."  *Id.* (emphasis added).

More recently, in *Ellzey v. Upper Gwynedd Township Board of Commissioners* (Pa. Cmwlth., No. 990 C.D. 2019, filed November 19, 2020),[15] this Court considered the extent to which a zoning board may approve a land development plan that encroaches on a neighboring municipality without the approval of the neighboring municipality.  In *Ellzey*, the Upper Gwynedd Township board of commissioners granted preliminary and final subdivision and land development approval for a property that encroached into Worcester Township and the right-of-way of a state-owned road, without the approval of either Worcester Township or the Pennsylvania Department of Transportation.  Specifically, the plan depicted, and the board purported to approve, an "encroachment" by a proposed driveway into Worcester Township.

On appeal, the objectors argued that the board erred in approving the plan without conditioning its approval on Worcester Township's approval of the improvements within its boundaries.  In considering this issue, we stated, citing *Hamilton Hills*, that "**municipalities generally have no authority to control land use beyond their own borders**."  *Id.*, slip op. at 12 (emphasis added).  We explained further:

---

[15] Under Section 414(a) of this Court's Internal Operating Procedures, we may cite an unreported memorandum decision of this Court, issued after January 15, 2008, for its persuasive value.  210 Pa. Code § 69.414(a).

12

In *Hamilton Hills* . . . , we discussed limited exceptions to that general principle, such as under written agreements between neighboring municipalities. But **we reaffirmed the general rule that, with respect to zoning and subdivision controls, municipalities have no authority outside their geographic boundaries.** We have also held that it is proposed *development* in an adjoining jurisdiction—rather than depiction of vacant property necessary for the subdivision approval—that triggers the requirement to seek approval from that adjoining jurisdiction.

. . . .

[I]t is beyond dispute that the [p]lan, as contained in the record, actually depicts a small area of overlap between the proposed driveway construction and Worcester Township. That is true notwithstanding statements by a representative of [the developer] that [it] "kept [the driveway] in [Upper Gwynedd Township]" and that [the developer] is "not encroaching on Worcester [Township]." . . . Moreover, **we do not believe that the small physical size of the encroachment (which is, perhaps, only a few square feet as depicted on the [p]lan) diminishes its significance. [Upper Gwynedd] Township has no authority to approve construction of improvements—large or small—outside its geographic boundaries under these circumstances.**

*Id.*, slip op. at 12-14 (some citations and footnote omitted) (italics in original; bold added). This Court noted, however, that the developer "did not seek or obtain [Worcester Township's] approval before submitting the [a]pplication," and, therefore, **the board's approval of the plan "did not extend to the portion of the proposed driveway located in Worcester Township**." *Id.*, slip op. at 15 (emphasis added). Therefore, we held that the board should have "condition[ed] final approval upon obtaining a permit, rather than denying [the application]." *Id.* (citations omitted).

While none of these cases is directly on point with this case, as they each involved very different facts and zoning requirements, they offer guidance to this

13

Court as we consider the application of Bethlehem's Zoning Ordinance to the Property at issue here, which encompasses two municipalities.

## B. Applicability of Bethlehem's Zoning Ordinance

The ordinance provision for which BAHX sought interpretive relief is the Commercial Use Provision, which provides, with respect to multifamily dwellings in the limited commercial district: "Such housing **shall be located in the same building as a principal commercial use that is on the front street level**. This requirement for a street[-]level commercial use **shall not apply to buildings fronting on local streets**." (Zoning Ordinance at 34 (emphasis added).) BAHX asserts, and the ZHB found, that the requirement of a street-level commercial use does **not** apply to Building 4 because Building 4 does not "front" on a "local street," as those terms are defined in the Zoning Ordinance.

In determining whether the Commercial Use Provision applies to Building 4, there are two parts to the inquiry: (1) whether Building 4 "fronts" on North Wahneta Street under the Zoning Ordinance, as the ZHB found, or on West Broad Street, as Bethlehem and Objectors contend; and (2) if Building 4 does "front" on North Wahneta Street, as the ZHB found, whether North Wahneta Street is a "local street" under Bethlehem's Zoning Ordinance.[16]

### 1. Whether Building 4 "Fronts" on North Wahneta Street or West Broad Street

---

[16] In a land use appeal where the trial court took no additional evidence, our review is limited to determining whether the ZHB abused its discretion or committed an error of law. *Herr v. Lancaster Cnty. Plan. Comm'n*, 625 A.2d 164, 167 (Pa. Cmwlth. 1993). The ZHB "abuses its discretion when its findings of fact are not supported by substantial evidence." *Id.* The interpretation of an ordinance, however, "presents this Court with a pure question of law, which is generally subject to plenary review." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015).

14

Bethlehem and Objectors assert that, under *Hamilton Hills*, Bethlehem's Zoning Ordinance can only be applied to land located within its borders. Thus, they assert that BAHX cannot designate Building 4 as "fronting" on North Wahneta Street under the Zoning Ordinance's definition of "front lot line" because the two streets that form the relevant corner of the Property—Hanover Avenue and North Wahneta Street—are located entirely in Allentown. Rather, they contend that Building 4 "fronts" on West Broad Street, as the Zoning Officer found. On the other hand, BAHX asserts that, under *Hansen-Lloyd*, the ZHB was permitted to consider all site features of the Property, including corners and streets that lie outside Bethlehem's borders, as long as the ZHB does not exert control over extraterritorial land. BAHX contends that simply choosing North Wahneta Street as the "front lot line" of the Property does not equate to an exertion of control over Allentown land.

To determine on which street Building 4 "fronts," we first look to the definitions of the relevant terms in the Zoning Ordinance. The Ordinance defines "front of building" as "[t]he wall of a building most nearly parallel with and adjacent to the **front of the lot** on which it is situated." (Zoning Ordinance § 1302.17 (emphasis added).)[17] Thus, to determine the "front of the lot," we look to the definition of "front lot line," which is "[t]he street line at the front of a lot. **In the case of a corner lot, the owner may designate either street line as the front lot line**." (*Id.* § 1302.67(g) (emphasis added)); *see Federici v. Borough of Oakmont Zoning Hearing Bd.*, 583 A.2d 15, 17 (Pa. Cmwlth. 1990) (recognizing that "corner lots have frontage on two streets").

---

[17] The Ordinance defines "lot" as **"[a] parcel of land fronting on a street used or designed to be used by one use or structure or by a related group of uses or structures** . . . , including such open spaces as are arranged or designed and required in connection with such structure or group of structures." (Zoning Ordinance § 1302.67 (emphasis added).)

15

There is no dispute that the Property at issue is a "corner lot." In fact, as depicted on the Sketch Plans, the Property has five different corners and six different street lines that could potentially be designated as the "front lot line" under the ordinance's definition. (Bethlehem's R.R. at 42a, 62a; *see also* BAHX's Supplemental Reproduced Record (S.R.R.) at 90a-91a (BAHX's engineer agreed that the Property is a "multi-corner lot" "because [there are] several intersecting streets and several intersections that surround th[e Property]").)[18] As equitable owner of the Property, BAHX chose to designate North Wahneta Street, where the main entrance to the proposed apartment complex is located, as the front lot line. The ZHB determined, therefore, that because the Property is a corner lot, "[BAHX], under Zoning Ordinance § 1302.67(g)[,] . . . was permitted to designate North Wahneta Street as the 'front lot line.'" (ZHB Decision, 9/29/23, at 13.)

However, this simple approach did not consider the complexities of this situation. First, North Wahneta Street is located entirely in Allentown, as is the corner formed by Hanover Avenue and North Wahneta Street. Bethlehem and Objectors assert that, under *Hamilton Hills*, the ZHB was required to limit its consideration to streets and corners within Bethlehem. The ZHB distinguished *Hamilton Hills* because it believed its consideration of the existence of streets beyond Bethlehem's borders did not equate to an exertion of control over Allentown land. However, here, unlike *Hamilton Hills*, *Hansen-Lloyd*, and *Ellzey*, the **entire portion** of the Property that the ZHB used to determine the "front lot line" under Bethlehem's Zoning Ordinance—that is, the corner formed by Hanover Avenue and

_____

[18] The pagination in BAHX's Supplemental Reproduced Record does not comply with Pa.R.A.P. 2173 (requiring that "any supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3 etc., . . . followed . . . by a small b, thus 1b, 2b, 3b, etc."). For convenience, the citations to the Supplemental Reproduced Record herein reflect BAHX's chosen pagination.

North Wahneta Street—is located **outside of Bethlehem** in another municipality.[19] This raises the question of whether BAHX is, or should be, permitted to choose one of those Allentown streets as the front lot line when neither street is governed by Bethlehem's Zoning Ordinance or within the ZHB's authority to regulate.

Second, the zoning district in which North Wahneta Street lies—the B-3 highway business district in Allentown—**does not permit** a multifamily dwelling use. In effect, by choosing an Allentown street as the front lot line and then designating Building 4 as fronting on that street, BAHX is attempting to piggyback the multifamily use that is permitted in Bethlehem onto property in another municipality that is zoned to exclude it. In this way, and contrary to its contention on appeal, the ZHB **is** exerting control over Allentown land, because it granted BAHX favorable interpretive relief for a development partially within Bethlehem's borders while the primary access to, and the bulk of the parking for, that development is located in Allentown, which does not permit that particular use. *See Ellzey*, slip op. at 14 (holding that where Upper Gwynedd Township purported to approve a

---

[19] Importantly, West Broad Street, which is located in Bethlehem, does not intersect or form a corner with North Wahneta Street. (*See* Bethlehem's R.R. at 62a; *see also id.* at 23a.) In addressing the "corner lot" issue, the ZHB found

> as a matter of fact that this Property is a "[c]orner [l]ot" as **the relevant lot lines** form an interior angle of less than 135 degrees at **the intersection of the two relevant streets.** Given this finding, [BAHX], under Zoning Ordinance § 1302.67(g)[,] . . . was permitted to designate North Wahneta Street as the "front lot line." It is noteworthy that **North Wahneta Street also contains the main entrance and West Broad Street is fenced off from the site**. The rear of . . . Building [4] faces West Broad Street.

(ZHB Decision, 9/29/23, at 13 (emphasis added).) By "two relevant streets," the ZHB seems to be referring to West Broad and North Wahneta Streets, as they are the only two streets mentioned in this discussion. However, for purposes of determining the "front lot line" of the "corner lot," the corner referenced in this paragraph must be the corner formed by **Hanover Avenue and North Wahneta Street**, since West Broad Street does not intersect with North Wahneta Street.

minor encroachment of "a few square feet" by a proposed driveway into the neighboring township, "[Upper Gwynedd] Township has **no authority to approve construction of improvements—large or small—outside its geographic boundaries under these circumstances**") (emphasis added).[20]

Third, by simply applying the Zoning Ordinance's definitions to land outside Bethlehem's borders, without giving appropriate consideration to these unique and significant facts, the ZHB stopped short of the full analysis that our case law requires.[21] Consistent with *Hamilton Hills*, we must look to the intent and purpose of the zoning restrictions at issue to determine whether the ZHB was permitted to apply the provisions of Bethlehem's Zoning Ordinance to Allentown land. *See Hamilton Hills*, 4 A.3d at 794-95.

The stated purpose of the limited commercial district in Bethlehem is "[t]o provide for less intensive types of commercial uses in areas that include many existing homes or small lots that are immediately adjacent to residential neighborhoods." (Zoning Ordinance § 1303.07(k).) The Zoning Ordinance also

---

[20] Under Bethlehem's Zoning Ordinance, Allentown should have been given notice of BAHX's application and an opportunity for comment. (*See* Zoning Ordinance § 1324.07 ("Where a property is located within 500 feet of municipal boundary, [**Bethlehem**] **City Staff should refer any** [**ZHB**] **application to the neighboring municipality for its comments**, unless such application only involves a dimensional variance for an existing residential lot.") (emphasis added).) It is unclear from the record whether Bethlehem gave such notice to Allentown. In its decision, the ZHB discusses the parties that were notified of the proceedings and how such notice was provided, but the ZHB does not mention whether any notice was provided to Allentown. (*See* ZHB's Decision, 9/29/23, at 2 & n.3.) The only reference to Allentown's involvement in the record was testimony that the Allentown Planning Commission "looked at this project" and "came away with a favorable recommendation." (BAHX's S.R.R. at 92a-93a.)

[21] The ZHB also appears to have erroneously found that "**no dwellings** are proposed in the City of Allentown portion of the Property." (ZHB Decision, 9/29/23, at 5 (emphasis added).) The record belies this finding. The Sketch Plans clearly show that the municipal boundary line between Bethlehem and Allentown runs through the westernmost portions of three of the proposed buildings on the Property (Buildings 1, 3 and 4), which the Zoning Officer confirmed in her testimony. (*See* Bethlehem's R.R. at 17a-18a, 62a.) Therefore, the ZHB's finding to the contrary is unsupported by the evidence of record.

provides that the design standards for the limited commercial district are intended to, *inter alia*, "[p]romote a mix of appropriate light business and residential uses in the same building," "[i]mprove the appearance of [Bethlehem's] commercial corridors," "[a]ttract new customers and new sources of employment and tax revenue," and "[c]reate opportunities to live, shop and work in the same area." (*Id.* § 1311.01(b), (d)-(f).) In keeping with the character of the limited commercial district in Bethlehem, the Commercial Use Provision requires a commercial space on the street level of a multifamily dwelling that fronts on an arterial street. By choosing North Wahneta Street, which is entirely in Allentown, as the front lot line and designating Building 4 as fronting on it, BAHX circumvents the requirements of the Commercial Use Provision **and** defeats the purposes of Bethlehem's Zoning Ordinance and Allentown's B-3 highway business district. (*See* Bethlehem's R.R. at 71a (stating that the purpose of Allentown's B-3 highway business district "is to provide locations for highway-oriented and other retail uses and services for large areas of the City [of Allentown] and beyond").) Therefore, we conclude that the ZHB applied the ordinance provisions in a manner that undermines the goals of both municipalities' zoning requirements. *See Hamilton Hills*, 4 A.3d at 796.

Moreover, if North Wahneta Street is deemed the "front lot line," then it appears that North Wahneta Street would be the street on which **all** buildings on the Property "front" under the Zoning Ordinance, not just Building 4. (*See* Zoning Ordinance § 1302.17 (defining "front of building" as "[t]he wall of a building **most nearly parallel with and adjacent to the front of the lot** on which it is situated") (emphasis added).) This creates other issues under the Zoning Ordinance that would impact the ultimate design of the Property. For example, if North Wahneta is the front lot line, then it appears that BAHX could not use the area between Buildings 1 and 3 and North Wahneta Street for surface parking as presently depicted on the

Sketch Plans. (*See id.* § 1306.01(b) (providing that, for multifamily buildings in the limited commercial district, "**[n]o new vehicle parking spaces shall be located between the front lot line along a public street and the front of a principal building**") (emphasis added); *id.* § 1311.04(b) ("Surface off-street parking . . . shall be located to the rear or side of principal buildings, **as opposed to being newly placed between the front lot line along a street and the front wall of a new principal building**.") (emphasis added).)[22]

We conclude that the ZHB's decision was erroneous due to its acceptance of BAHX's selection of North Wahneta Street in Allentown as the front lot line for the Property and its designation of Building 4 as fronting on that street. Under the unique circumstances of this case, BAHX cannot choose a street in another municipality as its front lot line when doing so defeats the purpose of Bethlehem's Zoning Ordinance and authorizes a land use that is not otherwise permitted in the neighboring municipality.

Having concluded that Building 4 cannot front on North Wahneta Street under these facts, we agree with Bethlehem and Objectors that Building 4 must front on West Broad Street, as the Zoning Officer found. (*See* Bethlehem's R.R. at 41a; Zoning Ordinance § 1302.17.) This conclusion is based on Building 4's close proximity to West Broad Street, its parallel orientation to West Broad Street, the designations of the Property in BAHX's application and Sketch Plans, and the testimony at the ZHB hearing. (*See, e.g.*, Bethlehem's R.R. at 7a (BAHX's application identifies Building 4 as the "building along West Broad Street"); *id.* at 62a (the Sketch Plans show that the wall of Building 4 closest to West Broad Street is only 20.9 feet from West Broad Street); BAHX's S.R.R. at 106a (when asked on

_____

[22] A "principal building" is "[a] building in which is conducted the principal use of the lot on which it is situated." (Zoning Ordinance § 1302.18.)

20

which street Building 4 "fronts," BAHX's engineer replied that "Building 4 has frontage along West Broad Street"); *id.* at 123a (BAHX's engineer testified that "Building 4 faces West Broad Street").) Indeed, the Sketch Plans submitted to the ZHB appear to depict an entryway into the building on the West Broad Street side of Building 4. (*See* Bethlehem's R.R. at 62a; *see also* BAHX's S.R.R. at 58a (the Zoning Officer described "the orientation of [Building 4] on the plan" as "front[ing] along West Broad Street").) BAHX's engineer also testified that there is a "minor" entrance/egress to the Property "on [West] Broad Street where there's an existing curb cut." (BAHX's S.R.R. at 135a.)

Therefore, because there is no dispute that West Broad Street is an arterial street in Bethlehem, the Commercial Use Provision applies to Building 4, and the ZHB erred in concluding otherwise.

## 2. Whether North Wahneta Street is a "Local Street"

Bethlehem and Objectors also assert that there is insufficient record evidence establishing that North Wahneta Street meets the definition of "local street" under the Zoning Ordinance.

As explained above, the Zoning Ordinance incorporates the definition of "local street" in the SDO. (Zoning Ordinance § 1302.01(a)(8).) Both North Wahneta Street and the intersection of North Wahneta Street and Hanover Avenue are located entirely in Allentown. Neither the SDO nor Bethlehem's Classified Streets Map classifies the nature of streets in Allentown. BAHX also presented no evidence that **Allentown** classifies North Wahneta Street as a "local street" under **its** zoning ordinance, nor did it present any evidence as to how (or whether) Allentown's zoning ordinance defines "local street."

North Wahneta Street is in Allentown's B-3 highway business district, as is the portion of the Property lying within Allentown. Under Allentown's zoning

21

ordinance, a portion of which is included in the record, the B-3 highway business district is "**usually found along a City [of Allentown] arterial street**," and its purpose "is to provide locations for highway-oriented and other retail uses and services for large areas of the City [of Allentown] and beyond." (Bethlehem's R.R. at 71a (emphasis added).)[23] This very limited evidence does not support the ZHB's finding that North Wahneta Street is a local street. Because North Wahneta Street is located in the B-3 highway business district, Allentown could consider North Wahneta Street to be an arterial street, not a local street.

Bethlehem and Objectors also assert that the ZHB erred in finding that "North Wahneta Street's main purpose is to provide access to individual lots" because BAHX presented no evidence to support that finding. We agree. In its decision, the ZHB stated that it partially relied on its members' "personal knowledge" of North Wahneta Street in making this finding. (ZHB Decision, 9/29/23, at 17-18.) Our Court, however, has rejected board members' reliance on personal knowledge when making zoning decisions, where such knowledge is unsupported by record evidence. *See Doris Terry Revocable Living Tr. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 873 A.2d 57, 63 (Pa. Cmwlth. 2005) ("The [b]oard members appear to have drawn on their personal knowledge of [the property owner] and of the neighborhood, **but this knowledge is not a valid substitute for evidence of record**.") (emphasis added).[24] There is no record evidence about North Wahneta

---

[23] BAHX's engineer testified: "To the west [of the Property] it's zoned B-3 highway business in Allentown. There you have a retail building and an eldercare facility across Wahneta. Further down Wahneta you have the Banko Beverage facility, and then Wahneta ends." (Bethlehem's R.R. at 24a.)

[24] Regarding the "local street" issue, Bethlehem asserts:

"[S]treets in Bethlehem" [as referenced in the SDO] are classified by width and use. The definitions of "arterial or collector street" and "limited access highway" refer

**(Footnote continued on next page…)**

22

Street from which we can conclude that the requirements and purpose of Bethlehem's Zoning Ordinance are satisfied.

Therefore, even if we were to conclude that Building 4 fronts on North Wahneta Street, the ZHB nonetheless erred in concluding that North Wahneta Street is a local street under Bethlehem's Zoning Ordinance.

### III. CONCLUSION

Under the unique factual circumstances of this case, despite the Property being a corner lot, BAHX cannot designate North Wahneta Street, which lies totally in Allentown, as the "front lot line" as defined by Bethlehem's Zoning Ordinance. The ZHB erred in concluding otherwise. Because Building 4 "fronts" on West Broad Street in Bethlehem, and it is undisputed that West Broad Street is a principal arterial street in Bethlehem, the ZHB also erred in concluding that the Commercial Use Provision is inapplicable.

In addition, the ZHB erred in concluding that North Wahneta Street is a "local street" under Bethlehem's Zoning Ordinance. North Wahneta Street lies entirely in Allentown. BAHX presented no evidence regarding Allentown's classification of North Wahneta Street. Rather, the record evidence establishes that North Wahneta Street is in Allentown's B-3 highway business district, which Allentown's zoning ordinance defines as encompassing Allentown "arterial" streets. Simply, in this

---

to carrying traffic "**between distant points in** [**Bethlehem."**] By its terms, therefore, **the** [**SDO's**] **classification of streets only applies to streets within . . . Bethlehem and does not extend to streets in any other municipality, including . . . Allentown.** Further, as the Zoning Officer testified regarding the definition of "street curb lines[,"] which are required to be approved by [Bethlehem's] Department of Public Works, [**Bethlehem's**] **Department of Public Works cannot approve curb lines in Allentown.**

(Bethlehem's Br. at 19 (italics in original; bold added); *see* Bethlehem's R.R. at 19a (Zoning Officer's testimony).)

23

record there is no evidence that North Wahneta Street would satisfy either Allentown's or Bethlehem's definition of "local street."

In summary, we conclude that the Commercial Use Provision of the Zoning Ordinance is applicable to Building 4, and, therefore, BAHX must include a principal commercial use on the front street level—that is, facing West Broad Street—of Building 4. Accordingly, we reverse the trial court's Order.


_____
RENÉE COHN JUBELIRER, President Judge

24

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Bethlehem, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | No. 1013 C.D. 2024 |
| | : | |
| Zoning Hearing Board of City of | : | |
| Bethlehem, BAHX LLC, Paul Fondl, | : | |
| Teresa Kloiber, and Mary Jo Makoul | : | |
| | | |
| City of Bethlehem, | : | |
| | : | |
| v. | : | No. 1066 C.D. 2024 |
| | : | |
| Zoning Hearing Board of City of | : | |
| Bethlehem, BAHX LLC, Paul Fondl, | : | |
| Teresa Kloiber, and Mary Jo Makoul | : | |
| | : | |
| Appeal of:  Teresa Kloiber, Paul Fondl, | : | |
| and Mary Jo Makoul | : | |

# **O R D E R**

NOW, July 7, 2025, the July 26, 2024 Order of the Court of Common Pleas of Lehigh County is hereby **REVERSED**.

_____
RENÉE COHN JUBELIRER, President Judge